28064.   SOMERS CONSTRUCTION COMPANY *et al. v.*
ATLANTIC COAST LINE RAILROAD COMPANY.

DECIDED FEBRUARY 15, 1940.   REHEARING DENIED MARCH 6, 1940.

*Carl N. Davie, Alex. McLennan,* for plaintiffs in error.
*Alston, Foster, Moise & Sibley, Philip H. Alston, Jr.,* contra.

SUTTON, J.   Atlantic Coast Line Railroad Company brought suit against Somers Construction Company and National Surety Corporation, alleging that the defendants were indebted to it in the sum of $841.42 for freight charges and demurrage on shipments of asphalt, crushed stone, and slag delivered to the construction com-

pany and used by it upon a project of the State Highway Board of Georgia; that the construction company had entered into a contract with the highway board for this construction work and had given a bond, copy of which was attached to the petition as exhibit A, with itself as principal and National Surety Corporation as surety, the material condition of the bond being as follows: "If the above bound principal shall  .  .  pay all just claims for work, tools, machinery, skill, and materials furnished by persons under or for the purpose of such contract and shall comply with all laws appertaining thereto, then this bond shall be void; otherwise of full force and effect.  It is the intention of the parties hereto that this bond shall be construed to be in accordance with the act of the legislature of Georgia, approved August 19, 1916.  See Georgia Laws 1916, at page 94 et seq."  The exception here is to a judgment overruling the defendants' general demurrers.  The question here involved is whether or not the freight and demurrage charges sued for come within the purview of the condition of the contractor's bond.  This bond was executed and delivered in compliance with the Code, § 23-1705, which provides: "No contract with this State, a county, municipal corporation, or any other public board or body thereof, for the doing of any public work shall be valid for any purpose, unless the contractor shall give bond, payable to the State or other body contracted with, with good and sufficient surety, for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract, conditioned for the completion of the contract in accordance with its terms, for saving the obligee free from all costs and charges that may accrue on account of the doing of the work specified for the payments as they become due of all just claims for work, tools, machinery, skill and materials furnished by persons under, or for the purpose of, such contract, and for a compliance with the laws appertaining thereto.  The penalty of such bond shall be not less than the contract price."  It is contended by plaintiff in error, that the intention of the statute is to protect the State and any one who furnishes labor or material to the contractor doing business with the State, and that a railroad can not be said to occupy the position of a laborer as to freight and demurrage charges, for the reason that it has a special lien and needs no additional security; that to hold that the charges

sued for are within the Code, § 23-1705, and the bond would be to place an additional burden on the State, in that the surety companies would be forced to increase their premiums, with the result that contractors would be compelled to make higher bids with resulting increased costs of highway projects, which additional expense, it is averred, the legislature never intended to place upon the State.

The question here raised has never been passed on by the appellate courts of this State; but that such a bond is to be liberally construed is shown by numerous decisions. In *Sinclair Refining Co.* v. *Colquitt County*, 42 *Ga. App.* 718 (157 S. E. 358), it was held that gasoline and oil furnished to a contractor engaged in performing public work, for use by him in such contract, were necessarily materials furnished for the purpose of the contract and persons so furnishing such supplies come within the protection of the bond. In *Yancey Brothers Inc.* v. *American Surety Co.*, 43 *Ga. App.* 740 (160 S. E. 100), it was held that one who furnished labor and material used in incidental and current repairs to the contractor's equipment and machinery used in the work done by him was protected by the contractor's bond. In *American Surety Co.* v. *Koehring Co.*, 44 *Ga. App.* 769 (162 S. E. 840), it was held that stipulated rental for machinery furnished and used in the prosecution of the work was within the purview of the bond. In *Western Casualty &c. Co.* v. *Fulton Supply Co.*, 60 *Ga. App.* 710 (4 S. E. 2d, 690), it was held that a person furnishing materials to a subcontractor under or for the purpose of a highway construction contract to guarantee performance of which a contractor's bond was given was within the protection of the bond. In *Whitley* v. *Bryant*, 59 *Ga. App.* 58, 61 (200 S. E. 317), in referring to the Code, § 23-1705, it was said: "Thus we think the statute in question not only protects persons doing work or furnishing materials etc. to the contractor, but also protects subcontractors and employees of subcontractors furnishing work or materials etc. for the purpose of the principal contract, and such a person, although he might not have brought the original action, may protect his rights by intervening." In City of Stuart *v.* American Surety Co., 38 Fed. 2d, 193, a Florida statute required contractors for public work to execute a bond "with the additional obligation that such contractor, or contractors, shall promptly make payments to all persons supplying

him, or them, labor, material, and supplies, used directly or indirectly by the said contractor . . or subcontractors in the prosecution of the work provided for in said contract." Under this statute, similar to the Georgia statute, the City of Stuart, for the use of Florida East Coast Railway Company, brought suit against a contractor's surety to recover for freight, switching, and demurrage charges on car-load material used in the performance of a contract with the city. It was held that such charges were within the liability of the contractor's bond. In construing the statute, as to the words "prompt payment to any person or persons *doing work* or *furnishing skill,* tools, machinery, or materials under and for the purpose of said contract" (italics ours), Judge Sibley, the writer of the opinion, stated that railroad transportation of materials combines the furnishing of work, skill, and machinery for the purpose of the contract.

In Standard Insurance Co. *v.* U. S., 302 U. S. 442 (58 Sup. Ct. 314, 82 L. ed. 350), an act of Congress approved August 13, 1894, c. 280 (28 Stat. 278), as amended (40 U. S. C. A. § 270), required any person or persons entering into a formal contract with the United States for the construction of any public building, etc. to execute the usual penal bond with good and sufficient sureties, with the additional obligation that such contractor or contractors "shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract" etc. In holding that "A claim of a common carrier by railroad for unpaid freight charges, due for transportation of materials used in the construction of a Federal building, is one for 'labor and materials' within the meaning of the act of August 13, 1894, as amended, and is covered by a contractor's bond given pursuant to that act," the court said: "Certainly labor is required for loading freight on railroad-cars, moving these over the road, and unloading at destination. A carrier who has procured the doing of all this in respect of material has 'furnished labor.' If a contractor had employed men to move the same kind of material in wheelbarrows, there could be no doubt that he furnished labor. In principle the mere use of cars and track and a longer haul creates no materially different situation. Nor do we find reason for excluding the carrier from the benefit of the bond because it might have enforced payment by withholding

delivery. The words of the enactment are broad enough to include a carrier with a lien. Nothing in its purpose requires exclusion of a railroad. Refusal by the carrier to deliver material until all charges were paid might seriously impede the progress of public works, possibly frustrate an important undertaking." The plaintiff in error seeks to distinguish the United States statute from our Georgia statute, by insisting that the language of the former, "supplying him or them with labor and materials in the prosecution of the work," and the language of the latter, "doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract," are different in meaning; but we think there is no substantial difference, as illustrated by the quotation from Standard Ins. Co. v. U. S., supra. That opinion also disposes of the contention of plaintiff in error, that, the railroad already having a special lien which it could exercise by withholding delivery, the statute should not be construed to embrace such charges as are here involved. In this connection the following quotation from State v. Ætna Casualty & Surety Co., 34 Del. 158 (145 Atl. 172, 176), is likewise pertinent: "The argument that it would be inequitable to allow a carrier to surrender the lien and collect from the surety does not appeal to us. What is a carrier's lien? It is simply the right to hold the consignee's cargo until payment is made for the work of transporting it. In simple terms it is the right to withhold the enjoyment by another of the fruits of work done in his behalf until he pays therefor. The carrier is authorized by the law of liens to say in substance what an ordinary laborer or vendor of goods is in position to say, viz., pay me for my labor in advance or for my goods before delivery; otherwise you shall not enjoy the benefits of the one or possess the other. The carrier, notwithstanding the cargo is the consignee's, can simply say, before I complete the labor of transportation by delivery to you, pay me for my work. That is all the lien is. It does not follow the goods when delivered, nor can the consignee be compelled to pay until they are delivered. Now what reason can there be in holding that a laborer or a meterialman may deliver his labor or materials on credit and go against the surety in case of nonpayment, but a transporter if he surrenders the cargo may not? If he may not, then this is the result, the very act of surrendering the cargo which will give rise to the debt, will relieve the surety

company of its guaranty of payment, and carriers when they are afraid to extend credit to the contractor will therefore hold back the materials and obstruct the work, a result which must be inharmonious with the statute's purpose."

We think that the authorities above discussed justify our holding, as we do, that the charges sued on are for "doing work or furnishing skill, tools, machinery, or materials" within the meaning of our statute and are covered by the contractor's bond given pursuant to that act. The petition set forth a cause of action, and the trial court properly overruled the general demurrers of the defendants.

*Judgment affirmed. Stephens, P. J., and Fellon, J., concur.*