39985.   INGALLS IRON WORKS COMPANY v.
STANDARD ACCIDENT INSURANCE COMPANY et al.

Decided March 5, 1963.

*Westmoreland, Hall & Pentecost, Harry P. Hall, Jr.,* for plaintiff in error.

*G. Ralph Burger, Casper Rich,* contra.

EBERHARDT, Judge. ■ The basis of the nonsuit was that plaintiff failed to show that the steel delivered to the shop of Caldwell was actually used in the construction of the school. Caldwell, the subcontractor, testified that the steel had been unloaded on his yard and mixed with other items of the same kind or type that had been purchased from other suppliers, that he had several similar jobs going at the same time, and that it was thus impossible to say whether the steel from Ingalls had gone into the building. There was similar testimony from his employee, Davis, who had prepared the shop drawings and placed the orders for the steel. Caldwell's employee, Davis, admitting that he had prepared the shop drawings for steel to be used in the school job, testified that "the material that was ordered for that job was based on these plans," and Caldwell testified that the job had been completed in accordance with the specifications and drawings. The drawings were furnished by Caldwell to Ingalls for use in preparing and shipping the steel. The credit manager of Ingalls testified that if the steel had not been ordered for a public use, required by law to be bonded, it would not have been supplied to Caldwell whose financial condition was weak.[1] An auditor who had examined the books, records and files of Caldwell testified that he found no order for similar steel placed with any other supplier during the period of school construction. Thus, Ingalls contends that by way of circumstantial evidence it has shown the use of its steel in the Riley school job.

In their briefs before this court counsel for both sides have

---

[1] It appears at least indirectly from the evidence that Caldwell was adjudged a bankrupt pending this litigation. He asserted that all of his books, records and files were in the hands of the trustee.

apparently taken the position that the issue turns on whether the use of the materials in the building may be shown by circumstantial evidence so as to fix liability to the supplier under the bond.

Perhaps decisive of this issue is a determination of whether, under the evidence here, the burden remains on the supplier to show actual use of the materials in the building, or whether it shifts to the obligors in the payment bond to show that they were not so used. And the question may be raised as to whether, under the circumstances here, there was any necessity of showing actual use of the materials.[2]

"Much of the hopeless confusion which has arisen in the decision[s] of the courts in determining the question of liability on the bond of a contractor engaged in making a public improvement is due, first to the nature of the subject-matter when the

---

[2]Under the lien statute such a showing may be required, though as yet this issue has apparently not been decided. While it was raised in *Bryant v. Ellenburg,* 106 Ga. App. 510 (127 SE2d 468) it was not there dealt with. Where materials are furnished directly to the owner he will be estopped to deny their use in making the improvement. *Howell v. Cordray,* 22 Ga. App. 195 (95 SE 762). A similar estoppel might well arise against the prime contractor of a public works job when the materials were furnished directly to him. A statement appearing in the headnote of *Adams & Co. v. General Electric Supply Corp.,* 62 Ga. App. 287 (8 SE2d 135), indicating that it must appear that the materials were "actually used in the construction of the building" is obiter, for that question was not in issue. In the first paragraph of the opinion is the statement that the "sole question presented" is whether recovery can be had under a contractor's bond for materials furnished to a subcontractor. Moreover, the statement is actually in conflict with the conclusion reached that a claim for freight and demurrage charges against a subcontractor was sustainable. And see *Sinclair Refining Co. v. Colquitt County,* 42 Ga. App. 718 (157 SE 358) and *Western Cas. &c. Co. v. Fulton Supply Co.,* 60 Ga. App. 710 (4 SE2d 690) where claims for gasoline, oil, etc. consumed in the contractor's equipment, but which could not have become a part of the improvement, where held sustainable.

question involves articles and materials furnished indirectly, or entering indirectly into the improvement; and second, to the mistake of applying in all cases the same principles of law which govern the establishment of mechanics' and materialmen's liens. . .

"There is a decided relationship between the law governing the establishment of a mechanics' and materialmen's lien and the law fixing liability on a bond of a contractor engaged in a public work or constructing a public improvement, but the statutes have different objects, and cases involving mechanics' and materialmen's liens do not afford an unfailing criterion." Eagle Oil Co. v. Altman, 129 Okla. 98 (263 P. 666, 668). With this we agree. The pattern of our lien statute, as found in Code Ann. § 67-2001 et seq., and that in the statute requiring public contractors to give performance and payment bonds, as now found in Ga. Laws 1956, p. 340 (Code Ann. § 23-1705)[3] do have some similarity. But there are also sharp differences, and the objectives are not the same. The lien statute is given a strict construction, Haralson v. Speer, 1 Ga. App. 573, 575 (58 SE 142), while the bonds statute is "liberally construed for the protection of those who do work or furnish materials for public works." Somers Const. Co. v. Atlantic C. L. R. Co., 62 Ga. App. 23 (7 SE2d 429). Under the lien statute the lien on the property is the security for the laborer and the materialman, while under the bond statute, where no lien can be secured, the bond is the security. The lien is created and imposed by operation of law, while the bond is a matter of contract, albeit a contract required by the statute to be made in order to give validity to another. Under the lien statute, prior to the amendment of 1956 (Ga. L. 1956, p. 185), a supplier of materials or labor to a subcontractor, having no contractual relation with the owner of the property, could acquire no lien, General Supply Co. v. Hunn, 126 Ga. 615 (1) (55 SE 957), while under the bond statute he was and is protected. Under the lien statute the owner may protect himself against liens for labor and materials by taking an affidavit from his contractor that these items have been paid, while no

---

[3]Formerly found in Ga. L. 1916, p. 94 (Code § 23-1705 et seq.).

such provision appears in the bond statute. Other differences might be catalogued, but these should suffice. There are, of course, many general principles of law that are equally applicable to situations arising under the statutes, but principles developed because of the provisions of one may have little, if any, application to the other.

It is here contended by the obligors in the bond that before Ingalls can establish any liability against them it must show with certainty that the very materials which are the subject matter of the suit actually went into the construction of the school, and that since it sought to do so only by way of circumstantial evidence the burden was not carried.

With this contention we cannot agree. Assuming, but not deciding, that liability under the bond arises only if the materials were used in the construction of the school, we think that the evidence here was sufficient to make a prima facie case.

Equally, it would seem with the duty of a passenger in a car to warn the driver of dangers that he may see ahead, was the duty of Caldwell here to use the steel in accordance with the purpose for which it was ordered and supplied, and until the contrary is shown, it is to be presumed that he did. *Beadles v. Bowen*, 106 Ga. App. 34, 37 (126 SE2d 254) and citations. The burden is upon the defendants to overcome the presumption with some evidence, once it arises. *Bartow Guano Co. v. Adair*, 29 Ga. App. 644 (3) (116 SE 342).

There is respectable authority from some of our sister states having similar lien and bond statutes that once the materials, purchased for use in the prosecution of a public work, are delivered to the purchaser (whether the prime contractor or a subcontractor), liability therefor under the payment bond arises and it is immaterial whether they be actually used in the construction or not. "[I]f any other rule of liability should be applied, materialmen would be compelled to stand guard over materials furnished and compel the contractor to incorporate them in the work in order to collect the purchase price. The logical result of such a rule would be to undermine and destroy business confidence and security." Standard Sand &c. Corp. v. McClay, 191 N. C. 313 (131 SE 754, 757); and see, Wilson-

Stamey Grocery Co. v. Ross, 194 N. C. 109 (138 SE 537); Crane Co. v. U. S. Fidelity &c. Co., 74 Wash. 91 (132 P 872); Hill v. American Surety Co., 200 U.S. 197 (26 SC 168, 50 LE 437). "There is no hardship for the contractor to obtain from the subcontractor bills for all labor done on and all materials and supplies furnished for the work before he pays the subcontractor, for he knows his bond covers these accounts." Moore v. Builders' Material Co., 192 N. C. 418 (135 SE 113). This may be said to be a part of the very undertaking for which the surety on the bond accepts a premium.

But whatever the rule, we think that the proof here was sufficient to meet the test of circumstantial proof laid down in *Georgia R. &c. Co. v. Harris*, 1 Ga. App. 714 (57 SE 1076), and that it was sufficient to raise a presumption that the steel was in fact used in the school job, without any consideration of the testimony of the auditor as to finding no records of any orders by Caldwell to other suppliers or shipments from them of steel of this type to him during the construction period.

■ The obligors on the bond here contend further, however, that since Ingalls did not show that a separate account was kept on materials sold to Caldwell for the Riley school job, but instead introduced its ledger card indicating that a general running account was kept on all materials sold and payments received, regardless of the job, no liability could arise under the bond and that for this reason the grant of a nonsuit was proper. For this reliance is had on *Williams v. Willingham-Tift Lbr. Co.*, 5 Ga. App. 533 (63 SE 584), and *Grigsby v. Fleming*, 96 Ga. App. 664 (3) (101 SE2d 217). Each of these cases arises under the lien statute which, as we have already pointed out, is given a strict construction. The requirement of keeping a separate account in that situation is for the protection of the owner against whose property it is sought to impose a lien. The necessity or rationale of that situation does not appear here, for the prime contractor has charge and control of the performance of the contract, and he knows or should know what labor and materials are furnished in the prosecution of the work. If he chooses to sublet a portion of the work he may require the subcontractor to furnish him with copies of invoices or statements

for all such materials, inform him as to the names and addresses of all suppliers, etc., and to give security; and if the prime contractor does not do so of his own volition the surety on his bond may require it done. Illinois Surety Co. v. John Davis Co., 244 U.S. 376 (37 SC 614, 61 LE 1206); 43 Am. Jur. 895, Public Works and Contracts, § 153; Annot. 70 ALR 311, 111 ALR 312. We conclude that neither *Williams* nor *Grigsby* has application to the situation here. Moreover, plaintiff did introduce invoices fully itemizing each delivery of steel to Caldwell, together with delivery receipts signed by his employee, and testimony that no payment had been received on any of them. Under the liberal construction of the bond statute to be applied for the protection of those who furnish materials for the prosecution of the work, we think that this was sufficient as to record keeping. "The act [requiring posting of bond on public jobs] may nevertheless by its terms include all persons who furnish material for the purpose of the contract, *irrespective of whether, but for the public character of the work,* they would have liens for the cost of the material furnished." (Emphasis supplied.) *Sinclair Refining Co. v. Colquitt County,* 42 Ga. App. 718 (2) (157 SE 358); *Western Cas. &c. Co. v. Fulton Supply Co.,* 60 Ga. App. 710, 711 (4 SE2d 690). Requirements under the two statutes are not the same. If payments have been made, and no credit given, that is a matter of defense. There was no plea of payment here, nor was there evidence of such.

■ Plaintiff sought to prove by its own witness that, when Caldwell or his agent placed orders by telephone for the steel, inquiry was made as to what use was to be made of it and that they were informed that it was to be installed in the Riley Elementary School. Defendants objected on the ground that any conversations between Caldwell or his agents and agents of the plaintiff would be hearsay. The objection was sustained and the evidence repelled. It is here contended that the proffered evidence was a statement made by Caldwell (or his agent) against interest relating to a collateral matter, though essential to the adjudication of the cause, and that it is admissible under *Code* § 38-405 (2). If the statement had been against Caldwell's interest there might be merit in this position, for it is not

to be assumed that one will make statements against interest that are untrue. However, we can not see how the fact that the steel was to be used in the Riley school job was against Caldwell's interest. Whether it was to be used on that or on some other job could in no wise affect his liability to Ingalls for payment of the purchase price. Moreover, since there could arise no liability under the bond unless the steel was furnished for the prosecution of the Riley school job, we think that the fact sought to be proved bears directly upon the main issue. The Code section simply does not permit the admission of a hearsay statement which is neither against the interest of the declarant nor upon a collateral matter. If the statement could be said to have been against Caldwell's interest, and the declarant were dead, a different result might very well be reached. See *Massee-Felton Lbr. Co. v. Sirmans*, 122 Ga. 297 (50 SE 92). We find no merit in the exception to this ruling on the evidence.

■ Plaintiff also sought to introduce into evidence a letter written by Caldwell to it in response to a request for a statement as to the use he had made of the steel in which it was stated that the steel described in certain numbered invoices went into the school job. Objection that this was hearsay was sustained and the letter was excluded. On the same basis of our ruling in Division 3 above this would be proper, but plaintiff urges that it was offered not only as proof of the use actually made of the steel, but as well for the purpose of impeaching Caldwell as a witness.

A reading of Caldwell's testimony reveals that it was of the most evasive character. While the school job had only recently been completed and he did testify that it had been completed in accordance with the plans and specifications, he could not say whether the steel supplied by Ingalls pursuant to his shop drawings for the type, sizes, dimensions, etc. of steel needed for that job had been used on it or not. If there has been entrapment as contemplated by *Code Ann* § 38-1801 the letter written by Caldwell after completion of the school job may be admitted for impeachment purposes, but since it is, as to the defendants here, hearsay, it could not be admitted on any other basis—and especially since the witness was present and testifying.

*Judgment reversed. Felton, C. J., and Russell, J., concur.*