41516.   DANIEL et al. v. DIXIE PLUMBING
SUPPLY COMPANY.

Argued September 8, 1965—Decided September 23, 1965—
Rehearing denied October 6, 1965.

*Herbert R. Edmondson,* for plaintiffs in error.
*Martin, Snow, Grant & Napier, T. Baldwin Martin,* contra.
Deen, Judge. ■ Prior to the commencement of this action, Daniel had filed a suit against Edmondson in which he alleged

that Edmondson had breached his agreement to install the plumbing and heating in the Baxley and Glennville armories as well as a contract relating to the Sparta armory, as a result of which the plaintiff was entitled to recover certain sums paid the subcontractor, the latter having failed to pay materialmen furnishing articles going into the construction of the buildings. The plaintiff prayed for an order requiring such materialmen, including Dixie Plumbing Supply Co., the plaintiff here, to intervene and prove the amount of their claims. The court granted a rule nisi. The final disposition of the case is not shown. Daniel now contends by way of plea in abatement that Dixie Plumbing is not entitled to pursue the present action because of Daniel's pending suit. The plea was properly overruled. It is obvious that Daniel in his own case seeks intervention by other alleged creditors simply for the purpose of proving his claim against Edmondson, and it does not appear that a prosecution of that case will result in any judgment which Dixie can levy against Edmondson. The plea of lis pendens lies where a plaintiff attempts to prosecute two actions at the same time against the same party on the same cause of action. *Code* § 3-601. Daniel in his suit seeks no relief against Dixie and Dixie seeks no affirmative relief against Edmondson and the former action shows no cause for abating the latter. *Ashcraft v. Marsh*, 81 Ga. App. 466 (2) (59 SE2d 333).

■ When Carroll Daniel Construction Co. entered into contracts with the State of Georgia to construct armories at Glennville, Baxley and Sparta, Ga., he contracted with Sam Edmondson, d/b/a Bibb Plumbing & Heating Co., to install various components. Bibb subcontracted with Dixie Plumbing Supply Co. for the purchase of materials on all projects, and Dixie on order delivered materials under invoices, some of which were marked: "Ship to c/o Carroll Daniel, Constr., Natl. Guard Armory, Baxley, Ga." with corresponding directions for the Glennville Armory. Stroberg of Dixie Plumbing testified that the shipping instructions were placed on the invoices by his staff from information received with the orders, that the materials were delivered accordingly and receipts were signed by the purchaser when they reached the job; that he was satisfied the

invoices correctly showed the disposition of the materials but that neither he nor anyone else could swear positively that each separate article was used at the address to which it was sent, although "we could go to the job and put our finger on every bit of it and tell except what is under the concrete and if you want to dig that up we will find that." Edmondson of Bibb Plumbing further swore that he checked the invoices and they were correct, although, "technically, I would not swear that every nipple or 10¢ item went in there, no," but that he ordered the material for each separate job as he needed it, checked the invoices every time he got them, and could not find any mistakes. Daniel, also, had accepted the invoices as correct and had, prior to this action, written Bibb Plumbing Co. enclosing a statement of account which showed the amounts owing by Bibb to various materialmen on each job, the amounts owing to Dixie Plumbing being allocated between the three construction sites in the same manner shown on the invoices. From the rationale of *Guthrie v. Berrin Products Co.*, 91 Ga. App. 45 (84 SE2d 596) and *Saye v. Athens Lumber Co.*, 94 Ga. App. 118 (93 SE2d 806), with special reference in the latter case to the special concurrence of Judge Quillian, the conclusion may be drawn that, where invoices or delivery slips are offered in evidence from a proper source and there is testimony that the materials were delivered to the addresses shown thereon, in the absence of any indication that they were not delivered or were delivered elsewhere, the court may from all the circumstances of the case find that the records were made in the regular course of business and that it was the regular course of such business to make such records or memoranda, so as to entitle them to be admitted in evidence under *Code Ann.* § 38-711 even though the source of the information placed on the invoices by the witness' clerks could not positively be testified to by him, as in such a case lack of personal knowledge may affect the weight but not the admissibility of the documents. The invoices were not inadmissible for any reason assigned.

■ The trial court instructed the jury on the defendant's counterclaim as follows: "In the amendment to his answer the defendant, Carroll Daniel, alleges that in a telephone con-

versation between him and Mr. Emory Stroberg, the general manager of Dixie Plumbing Supply Co., on or before December 3, 1962, Mr. Stroberg authorized the defendant, Carroll Daniel, to make a check payable to Sam Edmondson, doing business as Bibb Plumbing & Heating Co., rather than jointly to Sam Edmondson, doing business as Bibb Plumbing & Heating Co., and Dixie Plumbing Supply Co., in the amount of $7,792.86, which sum he, the said Carroll Daniel, would not have paid to Sam Edmondson had it not been for the authorization given to said defendant by Mr. Stroberg to so pay said sum and that by virtue of the payment so made to Sam Edmondson, upon the authorization of Mr. Stroberg, the defendant, Carroll Daniel, has been injured and damaged in the sum of $7,792.86 and that Dixie Plumbing Supply Co. is now estopped from claiming said sum or any part thereof from said defendant . . . If you find from a preponderance of the evidence that Mr. Stroberg did give such authorization to said defendant to pay said sum to Sam Edmondson rather than to Sam Edmondson and Dixie Plumbing Supply Co. jointly, and that by virtue of such authorization and payment said defendant, Carroll Daniel, will suffer a loss in the amount of the sum so paid, and if you further find the plaintiff is entitled to recover some amounts from the defendants, then you should reduce the sum you so find for the plaintiff in the sum of $7,792.86, being the amount paid to Sam Edmondson, doing business as Bibb Plumbing & Heating Co., by check of Carroll Daniel dated December 3, 1962."

In special grounds 6, 7 and 8 the defendant contends that this issue was not presented to the jury in the exact language requested, and that the court erred, in the last sentence, in saying "you *should* reduce the sum" instead of saying, as requested, "you *would have to* reduce that amount" by $7,792.86. The difference in wording between the instructions given and those requested is so small as to be inconsequential and is, to at least some extent, favorable to the movant, because the request stated in part that to find in favor of the cross action the jury would have to find both that an agreement had been worked out between the parties and that Daniel, in making out

the check, relied upon the agreement. The instruction given was that if the jury found (a) authorization, and (b) payment, they would have to find for the defendant, without the requirement of a finding that the defendant did in fact rely on the authorization in making the payment. The instruction given was in substantially the same language as that requested and was more favorable to the movant than the request. Nor does the substitution of "you should" for "you would have to" change the meaning of the instruction. See *Ivester v. McNicholas,* 157 Ga. 755, 763 (122 SE 417).

■ The court gave in charge the provisions of *Code* § 38-107 relating to the preponderance of evidence. A requested instruction on credibility of witnesses in substantially the same language was not included, but since there is no assignment of error on the ground that the request was not given *in totidem verbis,* no question is presented for decision. *Butler v. Reville,* 107 Ga. App. 345 (2) (130 SE2d 161); *Life & Cas. Ins. Co. v. Hulsey,* 109 Ga. App. 15 (2) (134 SE2d 880). This ruling applies to special grounds 9 and 10.

■ The motion for judgment n.o.v., the general grounds of the motion for a new trial, and special grounds 11 and 12 are here considered. *Code* § 20-1006 provides in part: "When a payment is made by a debtor to a creditor holding several demands against him, the debtor has the right to direct the claim to which it shall be appropriated. If he fails to do so, the creditor has the right to appropriate at his election." Under the rationale of *Federal Land Bank v. Bank of Lenox,* 192 Ga. 543 (4) (16 SE2d 9), the fact that there is a third party with an inchoate lien involved will not change the rule but will only enter into the question of allocating payments when this is done by the court in the process of litigation. The question becomes relevant to this case by reason of the fact that Daniel, the defendant general contractor, offered proof that he paid certain sums to Bibb which were sufficient to and included money for the purpose of paying off the indebtedness owing to various materialmen employed by Bibb on the Baxley and Glennville jobs, and that he has therefore paid Dixie because it was up to Dixie under these circumstances to collect the amounts owing

to it by Bibb. The argument is fallacious in the first place because there is no proof that Dixie knew when Daniel paid Bibb, nor when, nor how much. Daniel did not specify to Bibb for what purposes the money was to be used but he did allocate the payments in specific amounts between the three armory contracts. The owner of Bibb, who was engaged in purchasing material from Dixie for other installations as well as these, kept one bank account in which all his funds were mingled. Shortly after receiving payment from Daniel (which payment, however, was unknown to the plaintiff) he gave the plaintiff two checks, one allocated to another account and one without specific allocation, which the plaintiff then exercised its right to allocate to an unrelated account. The defendant insists that payment under these circumstances frees it from liability to the subcontractor, and in support of his position cites *Williams v. Willingham-Tift Lmbr. Co.*, 5 Ga. App. 533 (63 SE 584), a case involving the foreclosure of a materialman's lien against the owner of the improved property. There the contractor was indebted to the materialman on outstanding accounts at the time the materials were purchased to be used on the defendant owner's property, and was also doing other work for which he was making purchases from the plaintiff. The testimony was to the effect that when the owner paid the contractor, the contractor paid out some of the money to the materialman without specifying which property it was to be credited to. After the money had been applied to another account he requested that the payment be changed to show a credit in favor of the defendant, and the request was refused on the ground that the creditor had already exercised his right to elect the application of the payment. The court held: "When a materialman is furnishing at the same time material to one contractor for the improvement of property belonging to different persons, and has full knowledge of the separate contracts, and money is paid to the materialman by the contractor from time to time on account of the material so furnished, it is incumbent upon the materialman to keep separate accounts and to find out from the contractor on what contract the money is paid, and to what account it should be applied. If he does not do so, but applies

the money as a credit on a general account against the contractor, he thereby waives his right to a lien on the owner's property, and must look alone to the contractor." The same contention was made in *Ingalls Iron Works v. Standard Acc. Ins. Co.*, 107 Ga. App. 454 (2) (130 SE2d 606) in which it was held that since *Williams v. Willingham-Tift Lmbr. Co.*, 5 Ga. App. 533, supra, was brought under statutes relating to the foreclosure of a materialman's lien which are subject to strict construction, and *Ingalls* was brought under the law fixing liability on a bond of a contractor engaged in constructing public works, which is subject to liberal construction, and since in the latter case the prime contractor is actually engaged in the construction and therefore knows or should know what materials are being used and the source from which they come, the rule in *Williams* is not applicable to an action on a contractor's bond. Further, both *Ingalls* and *Horne-Wilson, Inc. v. Smith*, 109 Ga. App. 676 (137 SE2d 356) (although the latter is also a lien foreclosure case) hold that where the plaintiff materialman proves his contract, that the materials were shipped to the subcontractor for use in the construction project (which may be done, as here, by the introduction in evidence of the relevant invoices along with supporting testimony) and that he has not been paid, a prima facie case is established. Recognizing the obstacles to their point of view represented by these recent decisions, the defendants here have requested that this court review and overrule them. The cases have been considered, and the request to overrule is denied. It therefore follows that the verdict in favor of the plaintiff materialman against the prime contractor and his bond surety was supported by evidence.

No error of law appearing, the judgment of the trial court is
*Affirmed. Felton, C. J., and Jordan, J., concur.*