A90A2086. SUNDERLAND v. VERTEX ASSOCIATES, INC. et al.
(404 SE2d 574)

ANDREWS, Judge.

Sunderland appealed from the trial court's final ruling and grant of involuntary dismissal[1] as to portions of his claim against the payment bond issued by defendant American Insurance Company and provided by prime contractor Vertex Associates pursuant to OCGA § 13-10-1.

Viewed in favor of the court's findings in this non-jury case, the evidence was that Gwinnett County contracted with Vertex Associates for construction of an $831,000 elementary school. Vertex then subcontracted the $81,600 site work portion of the project to L. D. C. Grading. That subcontract agreement contained a non-assignment clause, forbidding the assignment of the entire work without written consent of the contractor, or of "portions of this Subcontract without written notification to the Contractor when such notification is requested by the Contractor."

---

[1] Although the court and counsel refer to summary judgment, the action requested and taken was an involuntary dismissal pursuant to OCGA § 9-11-41 (b); *Chamlee v. Dept. of Transp.*, 182 Ga. App. 120 (1) (354 SE2d 701) (1987).

L. D. C. did orally sub-subcontract at least a portion of the work to Sunderland (second tier subcontractor). Having been made aware by L. D. C. that Vertex required more trucks on the job, Sunderland entered into oral sub-sub-subcontracts (third tier subcontracts) with several other independent haulers to provide the additional trucks and drivers.

Vertex declared L. D. C. in default of its subcontract on March 31, 1989. Sunderland then sent timely notice to Vertex of his claim for $33,164.96 for "materials supplied for which it has not been paid." The notice further stated that it was for having provided "materials through Land Development Construction for the improvement of the Hopkins Elementary School Project."

At trial, Sunderland's evidence comprising the $33,164.96 claim included not only his charges for running his own trucks on the project, for which he was granted recovery of $6,780, but amounts for gravel supplied to him by Vulcan Materials, marked up seven cents a yard for handling and amounts owing to five of his third tier subcontractors on his separate subcontracts with them plus his own $2 per hour surcharge on these subcontracts.

The trial court held that Sunderland had no standing to assert the claims of his supplier Vulcan and his third tier subcontractors. The court further relied on the fact that these entities had not separately provided written notice of their claims.

1. (a) Georgia has provided the protection of a bond on public works projects since 1910. Ga. L. 1910, pp. 86-87 provided for one having a contract for a public work to provide a surety bond "conditional that such contractor or contractors shall promptly make payment to all persons supplying him or them with labor or material, or both, in the execution of the work provided for in such contract." Recovery against the bond was available to "[a]ny person, firm, or corporation supplying the contractor with labor or material or both. . . ."

That statute was repealed and replaced by Ga. L. 1916, pp. 94-99, which required a bond "for the use of the obligee [owner] and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract. . . ." It provided for suit on the bond under certain conditions by "the person doing work or furnishing skill, tools, machinery or materials to the contractor. . . ."

The statute was amended to basically its present form by Ga. L. 1956, pp. 340-345, now codified as OCGA §§ 13-10-1 and 36-82-100 et seq. The title of that act stated it was "to require a payment bond for the use of laborers and materialmen, subcontractors and laborers and materialmen of subcontractors. . . ."

While the lien statutes and the bond statutes serve similar purposes by providing for protection of those doing work when payment

is not passed on to them, "there are also sharp differences, and the objectives are not the same. The lien statute is given a strict construction, *Haralson v. Speer*, 1 Ga. App. 573, 575 (58 SE 142), while the bonds statute is 'liberally construed for the protection of those who do work or furnish materials for public works.' *Somers Const. Co. v. Atlantic C. L. R. Co.*, 62 Ga. App. 23 (7 SE2d 429). Under the lien statute the lien on the property is the security for the laborer and the materialman, while under the bond statute, where no lien can be secured, the bond is the security. The lien is created and imposed by operation of law, while the bond is a matter of contract, albeit a contract required by the statute to be made in order to give validity to another. Under the lien statute, prior to the amendment of 1956 (Ga. L. 1956, p. 185), a supplier of materials or labor to a subcontractor, having no contractual relation with the owner of the property, could acquire no lien, [cit.], while under the bond statute he was and is protected." *Ingalls Iron Works Co. v. Standard Acc. Ins. Co.*, 107 Ga. App. 454, 458 (1) (130 SE2d 606) (1963).

In *Home Indem. Co. v. Battey &c. Co.*, 109 Ga. App. 322 (136 SE2d 193) (1964), this court considered whether federal cases interpreting the parallel Miller Act, 40 USC §§ 270a and 270b, to exclude claims by second and third tier subcontractors were persuasive under our statute. In that case, Battey provided machinery, materials and equipment to Rome Plumbing, a subcontractor of National Heating & Air Conditioning, which was a subcontractor of Gann Construction Company, the prime contractor. The United States Supreme Court in *Clifford F. MacEvoy Co. v. United States*, 322 U. S. 102 (64 SC 890, 88 LE 1163) (1944)[2] based upon language identical to that in OCGA § 36-82-104 (b), "by applying [this] proviso reached the conclusion that the word 'subcontractor' in the Miller Act refers only to one having a direct relationship to the main contractor and that those supplying materials to the subcontractor not having such relationship have no right to sue on the bond. . . . [T]he Georgia statute does, as the Miller Act does not, have a section defining the word 'subcontractor' as used in the Georgia statute. [OCGA § 36-82-100 (2)] reads in part as follows: 'The term "subcontractor" includes *but is not limited to* those having privity of contract with the prime contractor.' (Emphasis ours.) The lack of such a definition in the Miller Act resulted in the construction placed thereon by the Supreme Court of the United States. Therefore, the Supreme Court decision construing the Miller Act is not only not persuasive authority but is no authority at all as applicable to the Georgia statute insofar as it holds that a subcontrac

---

[2] See also *J. W. Bateson Co. v. Board of Trustees &c.*, 434 U. S. 586 (98 SC 873, 5 LE2d 50) (1978).

tor is limited to those having privity with the main contractor. The Georgia statute is plain and explicit. [Battey] is such a person who, as according to the statute, has a right to sue upon the payment bond." (Indention omitted.) Id. at 325.

Similarly, *Tonn & Blank, Inc. v. D. M. Asphalt*, 187 Ga. App. 272 (1) (370 SE2d 30) (1988) dealt with the more restrictive lien statute and its similar definition of subcontractor as "means, but is not limited to, subcontractors having privity of contract with the prime contractor," and held that "[i]n the absence of a clearer definition, we construe the word 'subcontractor' to mean one who, pursuant to a contract with the prime contractor or in a direct chain of contracts leading to the prime contractor, performed services or procured another to perform services in furtherance of the goals of the prime contractor." Id.

Therefore, Sunderland is clearly a person who had a right to sue upon the bond. While the trial court relied upon the definition of "claimant" in the bond, i.e., "one having a direct contract with the Principal [Vertex] or with a Subcontractor of the Principal [L. D. C.]," as a basis for denying standing to Sunderland, Sunderland fits that definition of claimant. Also, because the bond is a statutory one, its terms can be no narrower than those of the statute. *Home Indem.*, supra at 326 (2).

The argument of Vertex and American based on the non-assignment clause in Vertex' contract with L. D. C. and *West End Tin Shop v. Broyles & Broyles*, 117 Ga. App. 11 (159 SE2d 774) (1967) is unavailing. The claim in that case was not made pursuant to OCGA §§ 13-10-1 and 36-82-100 et seq., but rested upon general third party beneficiary contract theory and this court, under those circumstances, found that the contract between the mechanical subcontractor and his sub-subcontractor and the payment bond posted by the mechanical subcontractor were not broad enough to cover a sub-sub-subcontractor of the sub-subcontractor. The project involved in the case was a federal project, making the Miller Act applicable to the prime contractor's payment bond, which was not at issue. This court did, however, look to the narrower federal interpretation of "subcontractor" in *MacEvoy*, supra, which was rejected as to our statutory bonds in *Home Indem.*, supra.

(b) The only issue then becomes whether Sunderland may include in his claim the amounts which he is contractually obligated to pay his third tier subcontractor.

" 'If the [sub] contractor [L. D. C] sees fit to let the work to a [sub-] subcontractor [Sunderland], who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contract to construct a public building, he is thereby supplied with the materials and labor for the fulfillment of his engage-

ment as effectually as he would have been had he directly hired the labor or bought the materials.' [*United States &c. v. American Surety Co.*, 200 U. S. 197 (26 SC 168, 50 LE 437) (1906)]." *A. K. Adams & Co. v. Gen. Elec. &c. Corp.*, 62 Ga. App. 287, 291 (8 SE2d 135) (1940); see *Murphy v. Fuller*, 96 Ga. App. 403 (2), (4) (100 SE2d 137) (1957). Therefore, Sunderland was entitled to pursue recovery for amounts for which he obligated himself while performing under the contract.

2. Sunderland's second enumeration alleges that he was entitled to judgment because he proved damages of $28,464.96, consisting of his original demand of $33,164.96 minus amounts paid directly by the bonding company to two of his subcontractors who filed direct claims. The court's ruling below did not reach this issue, having ruled as a matter of law that Sunderland could not assert such claims, and thus there is nothing in this regard ripe for this court's consideration.

3. Finally, Sunderland alleges error in the trial court's refusal to award "interest of $1,046.74 to date at the legal account rate of 18% per annum, pursuant to OCGA § 7-4-16, [on the principal amount of $33,164.96] . . . with future interest upon the judgment amount at the rate of 12% per annum."

OCGA § 7-4-16 allows recovery of interest on commercial accounts at the rate of one-and-one half percent per month if the amount due is liquidated and prayer is made for the 18 percent per year interest. *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 579 (2) (373 SE2d 758) (1988). " 'A debt is liquidated when it is certain *how much is due* and when it is due. (Cit).' [Cit.]" Id.

Here, the amounts owing from Sunderland to his third tier subcontractors were disputed. Because the court ruled that he had no standing to raise their claims, no affirmative ruling was made on any amounts due them or him on their claims. Thus, it cannot be said that those sums were liquidated. *American Aluminum Prods. Co. v. Binswanger Glass Co.*, 194 Ga. App. 703, 710 (391 SE2d 688) (1990); *Typo-Repro*, supra. Compare *Vulcan Life Ins. v. Davenport*, 191 Ga. App. 79, 85 (5) (380 SE2d 751) (1989).

As to the $6,780 invoiced by Sunderland for work performed by his own trucks, there was no contest of those hours, making that sum liquidated. Sunderland was therefore entitled to prejudgment interest on that sum.

*Judgment reversed. Pope and Beasley, JJ., concur.*

DECIDED JANUARY 14, 1991 —
REHEARING DENIED MARCH 26, 1991 — ■

*Bryant, Davis & Cowden, Larry S. Bryant, James W. Hays*, for appellant.

*Webb, Fowler & Tanner, Anthony O. L. Powell, Russell T. Bryant,* for appellees.