YANCEY TRACTOR COMPANY *v.* SOUTHERN SURETY COMPANY *et al.; et vice versa.*

Nos. 7701, 7786. FEBRUARY 11, 1931. REHEARING DENIED FEBRUARY 28, 1931.

L. L. *Moore, Bennet & Peacock,* and *Alston, Alston, Foster & Moise,* for plaintiff in error.

J. O. *Gibson, Hoyt H. Whelchel, John T. Coyle, W. G. Martin, Waldo DeLoache,* and *Alexander & Jones,* contra.

RUSSELL, C. J. In a bill for interpleader and other relief, Colquitt County asked for instructions as to its liability by virtue of a contract entered into by the county with a copartnership of contractors which had been employed by the county to grade and clay about 17 miles of roadway known as Project G-8-24 of the State Highway Commission, and also to determine the rights of several other parties who claimed an interest in a fund amounting to something over $16,000, which was in the hands of Colquitt County under the terms of the contract for grading which had been undertaken by the contracting firm. The sum of money in the hands of the county consisted of payments due in the first instance to Dean & Yarborough, who were employed by the county to do the road work upon the highway. The Southern Surety Company had given the county a bond for the faithful performance of the contract, the obligation of this bond as set out therein being: "The condition of the foregoing obligation is such that if the said principal [the contractors] shall well and truly indemnify and save harmless the said obligee [the county] from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law." The amount of the bond was $100,000. It was accepted by Colquitt County, and with the consent of the

county Dean & Yarborough assigned to Moultrie Banking Company their interest in any unpaid balance of ten per cent. retained by the county on the conclusion of the contract. They also transferred to Moultrie Banking Company the three-fourths interest in payments accruing from time to time from Colquitt County to secure advances of money necessary to be expended in the course of the conduct of the contract and the execution of their undertaking in grading and claying the road. The Yancey Tractor Company claimed that it had furnished certain tools, machinery, etc., which were essential to the execution of the work, by reason of which the contractors had become indebted to the tractor company about $800. D. B. Kimball claimed an indebtedness for services to the contractors, amounting to $1300. Sinclair Refining Co., for gasoline, etc., furnished to Dean & Yarborough, claimed an interest in the fund. Kimball's claim had been assigned to Moultrie Banking Company in exchange for cash obtained from that institution. Each and all of these claimants contended for a priority, or a right of payment based upon various different legal propositions; and in the view we take of this case it is immaterial to refer to or adjudicate the comparative merits of these claims, by applying to the facts all of the legal principles which the different contenders insist should control the adjudication.

In our opinion the paramount issue in this case is controlled by the rulings of this court in *American Surety Co.* v. *Small Quarries Co.,* 157 *Ga.* 33 (120 S. E. 617), and *Hannah* v. *Lovelace-Young Lumber Co.,* 159 *Ga.* 856 (127 S. E. 225), as it plainly appears from the record that there was no compliance with the requirements of the law as contained in the act of 1916 (Ga. L. 1916, p. 94), prescribing the essential requirements under which contracts for public work of all kind, exceeding $300, must be executed. Section 1 of that act, so far as relates to the nature of bonds required, declares that no contract with this State, a county, municipal corporation, for any public work "shall be valid for any purpose, unless the contractor shall give bond, payable to the State or other body contracted with, with good and sufficient surety, for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract, conditioned for the completion of the contract in accordance with its terms, for saving the obligee free

from all costs and charges that may accrue on account of the doing of the work specified, for the payments as they become due of all just claims for work, tools, machinery, skill, and materials furnished by persons under, or for the purpose of, such contract, and for a compliance with the laws appertaining thereto." The bond given in the present instance is an obligation payable to "Colquitt County," not for the use of the obligee and all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract, etc., but "The condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law."

It must be remembered that the act of 1916 was adopted in lieu of an act approved August 12, 1910 (Ga. L. 1910, pp. 86-87), and was "An act to repeal an act for the protection of persons furnishing material and labor for the construction of public works, and for other purposes, . . and to enact in lieu thereof an act entitled as follows: 'An act providing for the making of contracts by the State, counties, municipal corporations, or any other public boards, for the doing of any public work, and requiring the contractor in such contracts to give bond to the contractee for the use of the obligee, and all persons doing work or furnishing skill, tools, machinery, or materials for the purpose of such contract, naming the . . penalties in such bond; providing for the approval and filing of such bond, and conditions and penalties for the failure to take such bond; providing for the giving of new or additional bonds where the bond given becomes insolvent, or the surety insufficient; providing and regulating actions on such bonds, and limiting the time for bringing actions on such bonds." It is provided in section 2 that if such bond as is prescribed in section 1, together with the affidavit when necessary, be not taken in manner and form as herein required, the corporation or body for which the work is done under the contract shall be liable to all persons furnishing labor, skill, tools, machinery, or materials to the contractor therein, for any loss resulting to them for such failure. As said in *American Surety Co.* v. *Small Quarries Co.*, supra, "the

omission of the language italicized above from the face of the bond constituted a substantial variance from the 'manner and form' required under the act of 1916." The condition of the bond, as stated in the words italicised, was that the contractor should give a bond "for the use of the obligee and all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract," and the condition of the bond in the present case is "such that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed;" and for this forbidden and proscribed variation of the terms of the statutory bond required by law, it was held that the Small Quarries Company "could not sue the surety company in their own name." In the *Hannah* case, supra, suit was brought by the Lovelace-Young Lumber Company against the Faceville Consolidated School District, of which Hannah and his associates were trustees, the Lumber Company alleging that the School District had entered into a contract with S. O. Croom for the construction of a school building, and had accepted a bond executed by Croom and the Massachusetts Bonding & Insurance Company, guaranteeing performance of the contract; that said bond was not in compliance with the act of 1916, and did not furnish petitioner the protection contemplated by law; that petitioner had furnished lumber exceeding $2,000 in value, which actually went into the construction of the building; that Croom, the contractor, failed and refused to pay for the material, and thereafter petitioner procured a judgment against Croom, and a return of nulla bona was made, and petitioner made written demand upon the trustees of the School District for payment of the amount, which was refused. The petitioner prayed for mandamus to compel the School District to levy a tax sufficient to pay the claim, and for judgment against the School District. A copy of the bond was attached to the petition. The lower court made the mandamus absolute, requiring the defendant to levy the tax; and this judgment was reversed by this court. The majority of the court held that "suits for recovery of the value of work, material, etc., furnished to contractors constructing public buildings must be brought upon the contractor's bond in the name of the

body contracted with, 'for the use of' the person who furnished skill, labor, or materials of any kind." In *Southern Surety Co.* v. *Dawes,* 161 *Ga.* 207 (130 S. E. 577), in which Mr. Justice Atkinson delivered the opinion of the court, which was unanimous, the bond provided that "The conditions of this obligation are such that if the above bonded principal shall complete said contract in accordance with its terms, save the city free from all costs and charges that may accrue on account of doing the work specified, pay as they become due all just claims for work, tools, machinery, skill, and materials furnished by persons under or for the purpose of said contract, and comply with the laws appertaining to said contract, then this bond shall be void, but otherwise of full force and effect." It will be noted from the facts and the opinion in the *Dawes* case, that it was held: "A bond of a contractor with the City of Thomasville for the construction of certain public improvements, which makes special reference to the contract and is made payable to 'City of Thomasville or its special attorney,' and creating an obligation to the 'City of Thomasville, . . and all persons doing work or furnishing skilled labor, tools, machinery, or materials under or for the contract,' and in which the conditions are as prescribed in section 1 of the act of 1916 (Acts 1916, p. 94), is a sufficient statutory bond under the requirements of that statute; and a materialman furnishing material to the contractor in making the improvements specified in the contract can in his own name, where the city fails to sue in the time prescribed by the act, maintain an action on the bond, although the bond does not expressly state that it is 'for the use of' persons furnishing material for construction of the improvement." Both the facts and the ruling of the court distinguish that case from the present. There was no criticism or dissent from the controlling principle enunciated in *American Surety Co.* v. *Small Quarries Co.* The court merely held, in the *Dawes* case, that a materialman could bring suit in his own name and derive the benefits and protection accorded by the act of 1916, provided the county did not proceed to enforce the provisions in behalf of all persons having just claims for work, tools, machinery, skill, and materials furnished by persons under or for the purpose of said contract. In view of what we have said, it is unnecessary to deal with other assignments of error, especially those contained in the cross-bill of ex-

ceptions filed by the defendant in error. The judgment upon the main bill being affirmed, the cross-bill is dismissed, because any discussion of the assignments of error therein contained would be nugatory as to the present investigation.

*Judgment affirmed. All the Justices concur, except Beck, P. J., absent for providential cause.*