65717. B & B ELECTRICAL SUPPLY COMPANY, INC. v. H. J. RUSSELL CONSTRUCTION COMPANY, INC. et al.

BIRDSONG, Judge.
H. J. Russell Construction Co., Inc. entered into a contract as prime contractor with the Atlanta Housing Authority (AHA) to make

certain improvements to property owned by AHA. Russell entered into a subcontract with H & H Electrical Co. to perform the electrical work on the project. According to the contract between H & H and Russell, H & H was to furnish and pay for all materials, labor and equipment necessary to complete the electrical work on the project. The projected cost of the electrical contract was $49,667. Russell was required to obtain a performance as well as a payment bond designated to protect the agency AHA (by the performance bond) and the entities performing the work (by a payment bond). Russell did obtain a performance bond in the amount of the contract with AHA but did not obtain a payment bond in spite of the requirements of OCGA § 13-10-1 (Code Ann. § 23-1705). OCGA § 36-82-102 (Code Ann. § 23-1706) provides that if a payment bond is not obtained then AHA shall be liable to subcontractors who furnish labor, supplies, materials or equipment to the contractor for any loss resulting to the subcontractor.

H & H obtained its electrical supplies from B & B Electrical Supply Co., Inc. during the performance of its (H & H's) electrical work on the AHA improvements. Pursuant to an agreement between Russell, H & H and B & B, Russell issued progress payments to H & H by means of checks made jointly payable to H & H and B & B. These checks were based upon monthly consolidated vouchers given by B & B to H & H which in turn obtained payment from Russell. From February 1978 through August 1978, Russell issued jointly payable checks amounting to over $39,000. All but one of these checks were endorsed by B & B. But with B & B's approval and apparently without any notice to Russell, B & B accepted partial satisfaction of H & H's indebtedness by accepting payment each month in an amount less than the total of its monthly vouchers. By the end of August, H & H had fallen behind in its payments to B & B in an amount in excess of $24,000, though Russell had issued payments to H & H in excess of $40,000. It was stipulated by the parties (Russell and B & B) that H & H defaulted on its contract with Russell and was terminated from the project on August 31, 1978. No further supplies were furnished by B & B to H & H after that date. Russell completed the contract itself and in doing so expended at least the remainder of the agreed contractual cost between itself and H & H. On November 7, 1978, B & B filed a materialman's lien against AHA's property. It is not disputed that this lien was of no legal effect inasmuch as a lien cannot be effective against state property. B & B sent a copy of this lien to Russell which Russell received on December 13, 1978. The stipulation reflects that this was the first notice to Russell that B & B had not been fully paid by H & H by the several progress payments. On each occasion when Russell had issued the jointly payable checks,

H & H had certified that all suppliers had been satisfied or would be satisfied out of the proceeds of the check.

Based upon the foregoing occurrences, B & B brought this action against Russell and Travelers Indemnity Co., the provider of Russell's performance bond. Russell and Travelers sought summary judgment contending the bond afforded no protection to B & B and there being no privity between Russell and B & B, there was no viable cause of action against either the prime contractor or its indemnitor. The trial court granted summary judgment to both Russell and Travelers. This appeal followed complaining of the grant of summary judgment. *Held:*

B & B brought suit against Russell and Travelers based upon the provisions of OCGA § 36-82-104 (Code Ann. § 23-1708). In pertinent substance that statute provides that there is a cause of action to every person entitled to the protection of a "payment" bond required to be obtained by the prime contractor. The provisions of OCGA § 13-10-1 (Code Ann. § 23-1705) required a payment bond to be obtained made payable to the public body for which the work was to be done, and for the use and protection of subcontractors supplying labor and materials in the prosecution of the work on the public project. See *Motor Supply Co. v. St. Paul Mercury Indem. Co.,* 67 Ga. App. 236 (19 SE2d 737).

In this case it is not seriously contested that the bond taken by Russell from Travelers was a "performance" bond and was not a "payment" bond. By its provisions the performance bond provided: ". . . shall save harmless . . . the Housing Authority of the City of Atlanta, from any expense incurred through the failure of said contractor [Russell], or his, their or its servant, from any liability from payment of wages or salaries due or for material furnished said contractor, and shall well and truly pay all and every person furnishing material, or performing labor in and about the construction of said improvement work, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable. . . ."

An examination of these provisions makes clear that Russell's bond is for the sole benefit of AHA, protecting AHA from any failure of the contractor fully to perform its obligations under the contract and to take care of liabilities for wages or expenses incurred by the contractor (Russell) and for which Russell was liable. There is no contention that Russell had any obligation to B & B under the contract to furnish electrical supplies for B & B furnished all supplies to H & H directly and there was no privity between Russell and B & B.

It has been held that a "payment" bond does not meet the

requisites of the statute if the bond does not expressly state that the obligation is payable to the public body for the use of the public body and for all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of the public contract. *American Surety Co. v. Small Quarries Co.,* 157 Ga. 33, 34 (120 SE 617). A payment bond will be strictly construed and will not be extended by implication or interpretation. Thus a bond guarantying payment only to the public body and not to all parties furnishing services or supplies under the contract does not meet the statutory requirement of a payment bond. *Yancey Tractor Co. v. Southern Surety Co.,* 172 Ga. 110 (157 SE 298). To satisfy the statutory purpose of a payment bond, a payment bond for public work must include the specific statement that it is intended for all persons furnishing work or material for the public improvement or that the contract is to be construed so as to be in accordance with applicable statutes. *Somers Constr. Co. v. Atlantic C. L. R. Co.,* 62 Ga. App. 23 (7 SE2d 429). In the absence of one of these terms, a bond is not a "payment" bond and is not enforceable as such by a subcontractor or its materialmen. The materialman's remedy in such a case appears to be against the public body.

B & B does not contend that the bond has the requisite language. It seeks however to avoid that deficiency by contending that the language in the performance bond is sufficient to make it a "payment" bond if the bond is given a liberal construction and applying a "public policy" demand that a materialman be protected by construing the bond provisions against its maker.

All arguments considered, by the express terms of the performance bond, it is manifestly clear that Russell and Travelers are bound only unto AHA. There is no language that makes the bond for the use and benefit of anyone other than AHA. The actual performance makes no reference to any statute. The bond provisions obligate Travelers to indemnify AHA against all labor and material which Russell is required to pay. But Russell had no contractual obligations or other privity with B & B. Thus, the conclusion is ineluctable that the bond is not enforceable as a payment bond by B & B.

Moreover, even assuming arguendo that the bond somehow could be considered a "payment" bond, we find that B & B failed to make a timely notice and demand so as to qualify it as a claimant under such a bond. OCGA § 36-82-104 (Code Ann. § 23-1708) requires the contractor be given notice of a default within 90 days from the day on which the materialman (creditor) did or performed the last of the labor, or furnished the last of the material for which claim was made. This notice is required to be served in a specified format by registered

mail or by an appropriate deputy of the court. By stipulation of fact, the parties agreed that the last material was delivered to H & H by B & B on or before August 31, 1978. Though a lien was filed in November, 1978 (of no effect as against a state agency or state owned property) the lien did not make any reference to Russell at all and thus hardly could place Russell on notice that it was involved in the dispute between B & B and H & H. See *Neal-Millard Co. v. Trustees of Chatham Academy,* 121 Ga. 208 (48 SE 978). It is further stipulated that no written notice was furnished Russell until December 12, 1978, a period of 103 days after the last delivery of supplies. OCGA § 36-82-104 (Code Ann. § 23-1708) requires that notice be given in a particular manner — in writing and within 90 days of the last furnished material. Moreover, the giving of statutory notice is a condition precedent to the maintenance of an action on the claim. *Porter-Lite Corp. v. Warren Scott Contracting Co.,* 126 Ga. App. 436, 439 (191 SE2d 95). It is clear that B & B did not furnish appropriate legal notice so as to maintain its action. The performance bond could not be considered to have the force and effect of a payment bond, and the trial court did not err in concluding the bond could not be enforced by B & B nor in granting summary judgment to Russell and Travelers.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED MAY 2, 1983.

*George O. Lawson, Jr.,* for appellant.
*Kenneth L. Millwood,* for appellees.