A97A1765. R. J. GRIFFIN & COMPANY v. CONTINENTAL INSURANCE COMPANY.
(497 SE2d 586)

SMITH, Judge.

This is an appeal of the grant of summary judgment in favor of the surety on a construction performance bond and the corresponding denial of summary judgment for the general contractor obligee. We must decide whether a subcontractor's refusal to return funds belonging to the general contractor is covered by the subcontractor's performance bond issued in favor of the general contractor. Under the plain language of the subcontract and the bond, as well as the final waiver and release executed by the surety, we conclude that the subcontractor's wrongful retention of funds is a breach of the subcontract and covered under the terms of the bond. The trial court therefore erred in granting summary judgment to the surety and in denying summary judgment to the obligee.

The facts underlying this litigation are not in dispute.[1] R. J. Griffin & Company was the general contractor on a hospital project in Tampa, Florida. Griffin hired Doyle Electric Services, Inc. as a subcontractor, and the terms of the subcontract required Doyle to furnish a performance bond. Doyle obtained a performance bond

---

[1] Continental did not attempt to file a brief until over two months after it was due, and its brief was refused for filing. Court of Appeals Rule 26 (b). Because of Continental's failure to submit a timely brief, we accept Griffin's statement of facts as true and correct. Court of Appeals Rule 27 (b) (1).

from Continental Insurance Company. At the end of the project, Doyle and Continental both executed a separate final waiver and release of claims.

Doyle performed not only the contract work but a significant amount of additional work on change orders, including the installation of a generator. Doyle was paid twice for the generator work as the result of a clerical error and refused to return the overpayment. While the trial court agreed that Doyle had an equitable obligation to return the double payment, it concluded that Continental's performance bond did not cover Doyle's refusal to return the money. The trial court therefore denied summary judgment to Griffin while granting summary judgment to Continental. From this ruling Griffin appeals.

In determining the scope of coverage of the performance bond at issue here, we must follow the applicable rules of construction. In contrast to the general rule that policies of insurance are construed strictly against the insurer, the obligation of a surety is construed strictly in the surety's favor. *Arnold v. Indcon, L.P.*, 219 Ga. App. 813 (1) (466 SE2d 684) (1996); *Johns v. Leaseway of Ga.*, 166 Ga. App. 472 (304 SE2d 555) (1983). But it is also true that no construction of a surety's bond is "required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." (Citation and punctuation omitted.) Id. at 472-473.

Turning to the surety bond itself, we note that the parties to the bond are Griffin (obligee), Doyle (principal) and Continental (surety). The bond obligates the surety "to perform fully and complete the work mentioned and described in said subcontract and any and all modifications thereof pursuant to and in accordance with the undertakings, covenants, terms, conditions and agreements thereof, if the principal fails . . . to so perform fully and complete said work." The question presented is whether the obligation to "perform fully" includes the obligation to cure *all* breaches of the subcontract, not just the physical completion of the work. Under the plain language of the bond, we find that it does. The surety's contract is not limited to physical "work" — the contract obligates it to "perform fully" as well as "complete the work . . . in accordance with the undertakings, covenants, terms, conditions and agreements."

This is in accord with our decision in *McDevitt & Street Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640 (418 SE2d 87) (1992). In that case, Employers Insurance of Wausau issued a performance bond for a plumbing subcontractor. Wausau attempted to escape liability on the ground that the subcontractor had completed the work on the project, although that work later proved defective outside the period of the warranty provided by the subcontract. This Court

rejected a limitation of the surety's liability to mere completion of the physical work, observing: " 'Sureties . . . are jointly and severally liable with their principal unless the contract provides otherwise.' OCGA § 10-7-1. Since Wausau's obligation under the bond remained in full force and effect until K-C's obligations under the subcontract were terminated, and there was evidence that K-C did not 'well and truly perform' within the statute of limitation, the trial court erred in directing a verdict in Wausau's favor." Id. at 645 (6).

Here, Continental's suretyship contract binds it to complete the work in accordance with the subcontract, and the subcontract itself provides that "subcontractor's guarantors, surety, or sureties agree to be bound to contractor with respect to such remedies notwithstanding any provision of the bonds provided."

Under the subcontract, Doyle agreed "to perform and furnish, all labor, supervision, services, material, equipment, tools, scaffolds, transportation and all other things necessary to complete the work described in Exhibit 'A,' in accordance with the following standard terms and conditions." Among those terms and conditions, Doyle agreed to hold in trust for its subcontractors, suppliers, and materialmen all payments made by Griffin, to reimburse Griffin for backcharges, and to protect Griffin from possible consequences of any other breach or default. Finally, Doyle agreed that if it should "fail in the performance or the observance of any of the covenants, conditions or other terms of this subcontract, then . . . contractor shall . . . have the right to exercise any one or more of" certain enumerated remedies. Griffin's remedies under the subcontract were "cumulative and shall be in addition to every remedy given hereunder or under the prime contract documents, or now or hereafter existing at law or in equity."

The trial court found that Doyle wrongfully retained the funds and had an obligation to return them. Continental has not appealed that finding, and it was not enumerated as error in this appeal by Griffin. See generally *Patterson v. Professional Resources*, 242 Ga. 459, 462 (249 SE2d 248) (1978). Doyle has therefore breached its obligations under the subcontract, and Continental by the language of its surety bond has agreed to perform fully Doyle's obligations if Doyle fails to do so.

*B & B Elec. Supply Co. v. H. J. Russell Constr. Co.*, 166 Ga. App. 499 (304 SE2d 544) (1983), a case involving a public works bond under OCGA § 36-82-100 et seq., is inapposite here. In *B & B*, a subcontractor on an Atlanta Housing Authority project failed to pay one of its suppliers. Because the subcontractor had failed to obtain a payment bond as required under the subcontract, the supplier made a claim for payment under a performance bond issued to AHA, the owner of the project. After noting special requirements for a bond in

favor of a public body that are not applicable here, this Court rejected the claim, holding that the supplier could not claim under the performance bond because that bond was issued for the owner's sole benefit and the supplier "had no contractual obligations or other privity with" the general contractor. Id. at 502.

The fact situation here is quite different. It does not involve a claim for a general contractor's failure to pay a subcontractor or supplier for work performed. Instead, as noted above, the subcontractor has breached a direct obligation to the general contractor under its written subcontract, the surety expressly undertook to "perform fully . . . in accordance with the undertakings, covenants, terms, conditions and agreements" on behalf of the subcontractor, and the bond was issued in favor of the general contractor. Under these circumstances, Continental is bound to Griffin under the terms of its suretyship bond for Doyle's breach of its subcontract by wrongfully retaining Griffin's funds.

Moreover, Continental and Doyle also executed a final waiver and release in favor of Griffin. In this release, Continental expressly agreed "to be bound by the terms and conditions of this waiver and release," which included an agreement to "guarantee the performance of [Doyle] with respect to each and every term and condition of this waiver and release and does hereby agree to guarantee the performance of the undersigned with respect to each and every term and condition of this waiver and release and to continue in effect the obligations assumed with respect to the original subcontract." By signing the release, Doyle expressly waived any outstanding claims and also represented that "no obligations, legal, equitable or otherwise, are owed by the undersigned in connection with its work on the project." Continental thereby guaranteed Doyle's statement that it owed nothing and reaffirmed its obligation to guarantee the performance of Doyle under the subcontract.

Under the plain language of the bond, the subcontract, and the release, the trial court erred in granting summary judgment to Continental and denying summary judgment to Griffin.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 12, 1998 —
RECONSIDERATION DENIED FEBRUARY 27, 1998

*Griffin, Cochrane & Marshall, Harry L. Griffin, Jr., William H. Parkman*, for appellant.
*Richard A. Gordon*, for appellee.