A06A1753. JACKS v. CITY OF ATLANTA et al.
(644 SE2d 150)

MIKELL, Judge.

Lindsey Jacks appeals from the trial court's order granting summary judgment to the City of Atlanta on his claim for payment in connection with subcontract work done on a city park in the wake of an explosion there. Jacks also appeals from the trial court's ruling that the City did not have to obtain a payment bond from its general contractor because an emergency existed. We hold that Jacks's claim against the City did not accrue until after the City paid Jacks's contractor and that the City did not establish that it treated the event as an emergency. We therefore reverse.

The City does not dispute Jacks's account of the facts.[1] In the 1960s, the City bought 7.7 acres of dump land and turned it into a public park. On January 18, 1999, two children playing in the park

[1] See Court of Appeals Rule 25 (b) (1).

were injured when methane gas accumulated from decomposing solid waste exploded. The City selected R & D Testing and Drilling (R & D) to undertake remediation of the park property. R & D did not have the payment and performance bonds necessary for construction contracts in excess of $20,000, however. R & D hired C & S Environmental Services (C & S), which hired Jacks, who began working on the project in July 2001. Lack of funds halted the project by September.

After a review of invoices, including some submitted by Jacks, the City internal auditor found in February 2003 that "[t]he lack of competitive process and a formal executed contract ignored several City requirements and left the City at risk"; that R & D had been overpaid by over $1 million; and that some subcontractors, including C & S, had not been paid. The auditor recommended that the City pay C & S "up to $373,529 depending on availability of funds." On June 3, 2003, the City paid Sam Cooke, the president of C & S, precisely that amount in exchange for a release reading in part as follows:

> Sam Cooke and C & S Environmental hereby warrant, guarantee and commit to ensure that each and every trucker, equipment supplier, subcontractors, subconsultants, employees, companies, corporations, persons, independent contractors, . . . that performed work at its direction or under its employ shall be paid in full.

On July 22, Jacks gave the City written notice of unpaid invoices amounting to $183,587.50. When the City did not respond, Jacks filed suit against Cooke, C & S, and the City on August 28.

Jacks moved for partial summary judgment against the City under the Georgia Local Government Public Works Construction Law.[2] The City filed a cross-motion for summary judgment asserting inter alia that it was not bound to require bonds of its contractors in emergencies such as existed here,[3] and that Jacks had failed to give the required ante litem notice within six months of the completion of his work.[4] The trial court held that Jacks's failure to send a timely ante litem notice barred his claim. The trial court also found that a question of fact existed concerning the existence of an emergency for purposes of OCGA § 36-91-22 (e) and denied Jacks's motion for partial summary judgment on that basis.[5]

---

[2] OCGA § 36-91-1 et seq.

[3] See OCGA § 36-91-22 (e).

[4] See OCGA § 36-33-5 (b).

[5] Jacks survived the City's summary judgment motion on his claim for unjust enrichment, and also obtained a default judgment against Cooke and C & S.

1. Encoded at OCGA § 36-91-1 et seq., the Georgia Local Government Public Works Construction Law provides for the competitive bidding and adequate bonding of public works projects.[6] Jacks's claim against the City arises under OCGA § 36-91-91, which provides that "[i]f a payment bond or security deposit is not taken in the manner and form required in this article, the corporation or body for which work is done under the contract shall be liable to all subcontractors." Under the relevant ante litem statute, OCGA § 36-33-5 (b), a person bringing a claim for injury to person or property against a municipal corporation must give written notice "[w]ithin six months of the happening of the event upon which a claim against [the] municipal corporation is predicated."

As we held in *Kelly Energy Systems v. Bd. of Commrs. of Clarke County*,[7] the fact that a contractor is "unable to pay its account with [a subcontractor] on a timely basis" is not sufficient to activate the ante litem statute of limitation concerning that subcontractor's claim.[8] Where there is some evidence that the contractor is solvent as of a particular time, the subcontractor's claim will be held as arising no earlier than that time.[9] "The time within which the notice must be given in order to comply with the statute begins to run on the day the breach of the city's duty occurred."[10]

The City does not argue, let alone show, that C & S was insolvent at the time it obtained payment and signed the general release promising to pay its subcontractors. Instead, the record shows that after a lengthy public audit, the City decided to pay C & S in exchange for the latter's promise to pay all its subcontractors. Jacks gave the City written notice of his claim shortly afterward. Since Jacks's claim arose when both C & S and the City refused to pay him after June 3, 2003, the trial court erred when it granted the City partial summary judgment under OCGA § 36-33-5.[11]

2. OCGA § 36-91-22 (e) establishes an exception to the bond law's general provisions:

---

[6] See, e.g., OCGA §§ 36-91-20 (c) (public works construction contracts "shall be awarded on the basis of competitive sealed bidding or competitive sealed proposals"); 36-91-50 (a) (bid bonds "shall be required for all public works construction contracts . . . with estimated bids or proposals over $100,000.00").

[7] 196 Ga. App. 519 (396 SE2d 498) (1990).

[8] Id. at 520 (1).

[9] Id.

[10] (Citations omitted.) *Schaefer v. Mayor &c. of the City of Athens*, 120 Ga. App. 301, 302 (2) (170 SE2d 339) (1969).

[11] See *Kelly Energy*, supra at 521 (1) (reversing grant of directed verdict in favor of county under OCGA § 36-11-1).

The requirements of this chapter shall not apply to public works construction projects necessitated by an emergency; provided, however, that the nature of the emergency shall be described in the minutes of the governing authority.

The City has failed to produce any minutes referring to an emergency at the park, and its ordinance of June 1999 authorizing the "reclamation and replacement" of the park makes no mention of an emergency. Instead, the City argues that a reference to this June 1999 ordinance as "emergency authorization for the clean-up" in a second ordinance passed in April 2003, more than four years after the explosion, is sufficient to prove that an emergency existed. We disagree. The above-quoted statute requires that "the nature of the emergency shall be described in the minutes of the governing authority," which could provide the only proof that the governing authority treated the situation as an emergency *at the time it occurred*. We are in no position to abrogate the statute's requirements where its meaning is plain, and where its purpose is to protect subcontractors and materialmen from loss.[12]

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 14, 2007 — 

*Bauer & Deitch, Henry R. Bauer, Jr., Mary C. Cooney*, for appellant.

*Linda K. DiSantis, Robert N. Godfrey, Lisa M. Flagg*, for appellees.

---

[12] See *B & B Electrical Supply Co. v. H. J. Russell Constr. Co.*, 166 Ga. App. 499, 501 (304 SE2d 544) (1983) (payment bond requirement was "for the use and protection of subcontractors supplying labor and materials in the prosecution of the work on the public project") (citation omitted).