**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 20, 2015**

# In the Court of Appeals of Georgia

A14A1690. CITY OF COLLEGE PARK v. SEKISUI SPR AMERICAS, LLC.

MILLER, Judge.

Sekisui SPR Americas, LLC, a subcontractor that worked on a sewer project for the City of College Park ("the City"), sued the City when the general contractor failed to pay Sekisui for work performed, alleging that the City was liable because it had failed to ensure the contractor obtained a payment bond in violation of OCGA § 36-91-90. In addition to raising a cause of action under OCGA § 36-91-90 et seq., Sekisui also raised claims of quantum merit, unjust enrichment, implied obligation to pay, and sought attorney fees. The parties filed cross-motions for summary judgment, and the trial court granted Sekisui's motion and denied the City's motion. The City appeals, contending that the trial court erred in denying its motion to dismiss

the case for failure to comply with the ante litem notice requirements for suits against municipalities. The City also contends that the trial court erred in granting summary judgment to Sekisui because the undisputed evidence showed that Sekisui was not entitled to relief for a violation of OCGA § 36-91-90, Sekisui was precluded from pursuing other forms of relief, and questions of fact remained as to damages.[1] Since Sekisui does not have a viable claim against the City, we reverse.

"Summary judgment is appropriate when the moving party demonstrates that no genuine issues of material fact remain and that the facts, construed favorably to the nonmoving party, demand judgment as a matter of law. On appeal, we review the trial court's grant of summary judgment de novo." (Footnote omitted.) *Vaillant v. City of Atlanta*, 267 Ga. App. 294 (599 SE2d 261) (2004).

So viewed, the evidence shows that during the summer of 2005, the City began discussing the need for public works construction on sewer lines in the city, including

---

[1] The City attached several exhibits to its brief that caused the brief to substantially exceed the applicable page limit. See Court of Appeals Rule 24 (f). Sekisui moved to strike the excess pages, and the City responded by moving for permission to exceed the page limit. Since these exhibits appear in the record transmitted by the trial court, Sekisui would suffer no prejudice by consideration of the excess pages. See Court of Appeals Rule 24 (g) (we will not consider documents attached to an appellate brief that are not part of the certified appellate record). Consequently, we grant the City's motion to exceed the applicable page limit and deny Sekisui's motion to strike.

the repair of the main sewer line on Embassy Drive that had apparently collapsed and needed emergency repair. Southern Products submitted a quote to install a sewer bypass near the creek adjacent to the intersection of Riverdale Road and Embassy Drive. On August 5, 2005, the City approved the quote and directed Southern Products to begin as soon as possible.

On August 8, Southern Products sent a letter requesting that the City use its existing Clayton County Water Authority Annual Contract (the "CCWA Contract") in order to replace approximately 1,049 linear feet of the ten-inch sewer pipe near Embassy Drive (the "Embassy Drive Project"). Southern Products estimated that this project would cost $204,481.50. In the August 8 letter, Southern Products offered to absorb some of the costs associated with maintaining the bypass system during any delay with the start of the sewer line replacement.

The City sought permission from Clayton County to use the CCWA Contract to complete the Embassy Drive Project. Clayton County authorized the City to use the CCWA Contract to establish the terms, unit pricing, and conditions of work in reaching an agreement with Southern Products, but notified the City that the CCWA Contract would not be extended to cover the Embassy Drive Project.

Thereafter, the City contracted with Southern Products to complete the Embassy Drive Project, notifying Southern Products that it was to proceed pursuant to the terms of the CCWA Contract. The CCWA Contract pertinently provided that a "Payment and Performance bond will be required only in the event that a job is assigned to the contractor that is an amount greater than $100,000.00." Southern Products did not obtain a payment bond for the Embassy Drive Project.

Southern Products hired Sekisui as a subcontractor to provide all labor, equipment, and materials, as well as general and project administration services, for the Embassy Drive Project. See *City of College Park v. Georgia Interlocal Risk Managment Agency*, 313 Ga. App. 239, 239-240 (721 SE2d 97) (2011) ("*GIRMA*"). Sekisui began working on the project in September 2005, and at the end of the month, Sekisui submitted its first invoice to Southern Products, who paid it after receiving payment from the City. Id. at 240. Based on circumstances at the site, the scope of work increased and the cost of the project exceeded the initial estimate. In October and December 2005, Sekisui submitted two additional invoices totaling over $314,000. The City paid Southern Products in full for Sekisui's work on the Embassy Drive Project, but Southern Products did not pay Sekisui's last two invoices. See id.

4

When its attempts to recover on the unpaid invoices were unsuccessful, Sekisui filed suit against Southern Products, which subsequently ceased operations and became insolvent. Sekisui also filed the instant suit against the City, and the trial court granted summary judgment to Sekisui on all counts, with the exception of attorney fees, which the trial court reserved upon conclusion of this appeal.

1. On appeal, the City contends that the trial court erred in denying its motion to dismiss Sekisui's complaint on the ground that Sekisui failed to give proper ante litem notice under OCGA § 36-33-5. We disagree.

As part of the Georgia Local Government Public Works Construction Law, OCGA § 36-91-1 et seq., a payment bond or other security in lieu of the bond is required for all public works construction contracts with an estimated contract amount greater than $100,000. OCGA § 36-91-90. "If a payment bond or security deposit is not taken in the manner and form required in this article, the corporation or body for which work is done under the contract shall be liable to all subcontractors . . . furnishing labor, skill, tools, machinery, or materials to the contractor . . . for any loss resulting to them from such failure." OCGA § 36-91-91.

With regard to ante litem notice, OCGA § 36-33-5 (a) pertinently provides that

5

> [n]o . . . corporation having a claim for money damages against any municipal corporation on account of injuries to person or property shall bring any action against the municipal corporation for such injuries without first giving notice as provided in this Code section.

OCGA § 36-33-5 (a). The notice must be written and presented within six months of the event upon which the claim is predicated. OCGA § 36-33-5 (b).

The plain text of the statute makes clear that it applies only to tort claims regarding personal injury or property damage. See *City of Statesboro v. Dabbs*, 289 Ga. 669, 670 (1) (a) (715 SE2d 73) (2011); *Sims v. City of Alpharetta*, 207 Ga. App. 411, 412 (1) (428 SE2d 94) (1993). Based on this text, Georgia courts have held that a party is not required to provide ante litem notice for an action arising out of a contract. See *Neely v. City of Riverdale*, 298 Ga. App. 884, 885- 886 (1) (681 SE2d 677) (2009); see also *Dabbs*, supra, 289 Ga. at 670 (1) (a) (party not required to provide ante litem notice for violations of Open Meetings Act).

In this case, Sekisui claimed that the City violated OCGA § 36-91-91 and sought payment for work performed under a subcontract under theories of unjust enrichment, quantum merit, and implied obligation to pay. None of these claims are torts regarding personal injury or property damage. See *GIRMA*, supra, 313 Ga. App. at 245-246 (2) (concluding that Sekisui's claims arose out of or were connected with

6

its contract with Southern Products). Therefore, Sekisui was not required to comply with the ante litem notice requirements before filing suit, and the trial court did not err in denying the City's motion to dismiss.

The City relies on *Jacks v. City of Atlanta*, 284 Ga. App. 200 (644 SE2d 150) (2007), in support of its argument that the ante litem notice requirement is applicable to claims arising under OCGA § 36-91-91. *Jacks* is disapproved to the extent it holds the ante litem notice requirements under OCGA § 36-33-5 applies to claims arising under OCGA § 36-91-91 because the plain text of OCGA § 36-33-5 is clear that it applies only to tort claims relating to personal injury and property damage. See *Dabbs*, 289 Ga. at 670 (1) (a).

2. The City contends that the trial court erred in denying its motion for summary judgment and granting Sekisui's motion because the City was not required to obtain a payment bond since the Embassy Drive Project was necessitated by an emergency. We agree.

The requirement that a municipality obtain a payment bond for public works construction contracts with an estimated cost greater than $100,000.00 under OCGA § 36-91-90 does not apply to projects that are

necessitated by an emergency; provided, however, that the nature of the emergency shall be described in the minutes of the governing authority. Any contract let by a county pursuant to this subsection shall be ratified, as soon as practicable, on the minutes of the governing authority, and the nature of the emergency shall be described therein.

OCGA § 36-91-22 (e). "Emergency" is defined as "any situation resulting in imminent danger to the public health or safety or the loss of an essential governmental service." OCGA § 36-91-2 (7).

In this case, the evidence shows that the main sewer line on Embassy Drive had collapsed, and in August 2005 the City authorized Southern Products to install a sewer bypass and approved the Embassy Drive Project to replace approximately 1,000 linear feet of the main sewer line in the area. There is also no dispute that in September 2005, the City held a city council meeting in which it ratified the emergency replacement of the sewer main on Embassy Drive.

Sekisui argues that the City was not entitled to the statutory exception under OCGA § 36-91-22 (e) because its minutes from the city council meeting are insufficient to establish an "emergency" since the City did not describe or otherwise introduce evidence of any imminent danger to public health or safety or loss of an essential government function. Contrary to Sekisui's arguments, however, the plain text of OCGA § 36-91-22 (e) does not require such specificity or elaboration, nor

8

does the statute require additional evidence. The statute plainly provides that the only requirement is that the nature of the emergency be described in the minutes of the governing authority. The City's description in the minutes of the "emergency replacement of a 10[-inch] sanitary sewer main on Embassy Drive," was sufficient to describe the nature of the emergency under OCGA § 36-91-22 (e). See OCGA § 1-3-1 (c) ("substantial compliance with any statutory requirement, *especially on the part of public officers*, shall be deemed and held sufficient[.]") (emphasis supplied). Therefore, the City was exempt from securing a payment bond under OCGA § 36-90-90. Accordingly, Sekisui's cause of action under OCGA § 36-91-91 failed and we need not consider the City's remaining arguments challenging the viability of this claim.

3. The City contends that Sekisui's claims for unjust enrichment, quantum merit, and implied obligation to pay are barred as a matter of law because OCGA § 36-91-91 provided the exclusive remedy by which Sekisui could sue the City. We agree.

"Under Georgia law, a materialman or subcontractor may not recover against an owner or general contractor with whom it has no contractual relationship, based on the theory of unjust enrichment or implied contract; rather, it is limited to the

9

statutory remedies provided by Georgia's lien statute." (Citations and punctuation omitted.) *Hussey, Gay & Bell v. Ga. Ports Authority*, 204 Ga. App. 504, 506 (2) (420 SE2d 50) (1992); see also *Callahan v. Hall*, 302 Ga. App. 886, 888 (691 SE2d 918) (2010) (subcontractor is precluded from pursuing a quantum merit claim in the absence of a direct contractual relationship). Consequently, in this case, as a subcontractor, Sekisui could not recover against the City under the implied contract theories of unjust enrichment, quantum merit, or implied obligation to pay. See *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 871-872 (2) (556 SE2d 831) (2001); *Hussey, Gay & Bell*, supra, 204 Ga. App. at 506 (2).

Regrettably, the only remedies that would have been available to Sekisui are now foreclosed. Notably, as discussed above, Sekisui could not proceed against the City under OCGA § 36-91-91 because no payment bond was required for the Embassy Drive Project. A subcontractor may pursue a lien against the public works owner on the funds payable to the general contractor when, as here, the legal remedy under OCGA § 36-91-91 is unavailable or inadequate. See *McArthur Elec., Inc. v. Cobb County School Dist.*, 281 Ga. 773, 774-775 (642 SE2d 830) (2007). It is undisputed, however, that the City paid Southern Products for all of Sekisui's work on the Embassy Drive Project. Therefore, the City does not owe any funds to

10

Southern Products for which Sekisui could pursue a lien. Accordingly, Sekisui failed to establish a claim for relief, and the trial court erred in granting summary judgment to Sekisui and in denying summary judgment to the City.

*Judgment reversed. PHIPPS, C.J., ANDREWS, P.J., BARNES, P.J., ELLINGTON, P.J., DOYLE, P.J., DILLARD, McFADDEN, BOGGS, RAY, BRANCH and McMILLIAN, JJ., concur.*