A06A1025. IN RE LONGINO.

(636 SE2d 683)

ANDREWS, Presiding Judge.

John T. Longino was appointed by the Probate Court of Fulton County on March 28, 2005, as guardian of the person and property of his incapacitated mother, Sue Rollins Longino (the ward). The court cited Mr. Longino on its own motion on May 9, 2005, to answer the charge that there may be cause to revoke his letters of guardianship; conducted an investigation, and issued an order on October 18, 2005, revoking his letters as guardian of the property (now referred to as conservator).[1] Mr. Longino appeals and for the following reasons we affirm.

1. Mr. Longino contends that the court erred by revoking his letters of conservatorship because the revocation was based on grounds not included in the written citation issued to him by the court, and therefore he was not given notice sufficient to enable him to answer the charge that there was cause to revoke his letters.

Former OCGA Title 29, which was in effect when the court cited Mr. Longino, and revised Title 29, which took effect before his letters were revoked, contain similar procedures for revocation of letters to guardians or conservators. Under former OCGA §§ 29-2-45 (a) and 29-5-9 (a) (1), and under revised OCGA § 29-5-92, when it appears to the court that good cause may exist to revoke letters, the court is directed to "cite the conservator [formerly guardian of the property] to answer the charge," and after investigation the court may, in its discretion, revoke the letters.

---

[1] After the court cited Mr. Longino, the General Assembly adopted a comprehensive revision of Title 29 (Guardian and Ward) of the Official Code of Georgia, effective July 1, 2005. Under revised Title 29, the term "guardian" replaces the former term "guardian of the person," and the term "conservator" replaces the former term "guardian of the property."

The record shows that the court issued Mr. Longino a written citation informing him that the court had reviewed certain documents he filed with the court: a "Petition to Invalidate Documents," an "Agreed Order" to be entered by the court, and an attached "Agreement" signed by all three of the ward's children including Mr. Longino. The citation stated that the "Agreed Order" and "Agreement" appeared to be an effort to settle issues raised in the "Petition to Invalidate Documents." In the "Petition to Invalidate Documents," Mr. Longino asked the court, among other things, to void a trust administered by the financial management firm of Smith Barney that he claimed was illegally created by his brother for the benefit of the ward and into which the bulk of the ward's assets had been transferred. Under the "Agreed Order" and "Agreement," the assets held in the trust would have been returned to the ward; Mr. Longino's brother would have been substituted as guardian of the property over those assets, and Mr. Longino would have remained as guardian of the property over the ward's remaining assets and remained as guardian of the ward's person. The "Agreed Order" and "Agreement" also would have invalidated a codicil to the ward's will, and divided up some of the ward's personal property between the ward's children to be held for the ward's benefit in the event she recovered sufficiently to ask for its return. The citation charged that Mr. Longino's consent to the "Agreed Order" based on the attached "Agreement," and his consent to division of some of the ward's property, may be cause to revoke his letters because he had an apparent or actual conflict of interest with the ward and may not be acting in the ward's best interest.

After the court investigated the charge and held a hearing at which Mr. Longino testified, it entered an order on October 18, 2005, revoking the letters issued to him as guardian of the property (conservator); appointing a nonfamily successor conservator to manage the ward's property, and retaining Mr. Longino as the ward's guardian (formerly guardian of the person). As one of the grounds for revoking Mr. Longino's letters, the court noted that Mr. Longino's brother and sister had revoked their consents to the "Agreed Order" and "Agreement" and stated their opposition to his petition to void the Smith Barney trust. The court found that the 90-year-old ward had in excess of $2,000,000 in assets, but that she was not getting all of the care she needed because the assets remained frozen as a result of litigation ensuing from Mr. Longino's efforts to void or move the trust. The court considered evidence that, as part of his efforts to void the trust or move the trust assets from Smith Barney to another financial management company, Mr. Longino used or intended to use his guardianship authority to place himself in the position of sole trustee of the trust. The court concluded that these actions or proposed

actions were beyond the scope of the authority placed in Mr. Longino by the court and actually or apparently placed him in a position adverse to service as the ward's guardian of the property (conservator). The court also noted that, because Mr. Longino had informed the court that he did not consider his brother to be trustworthy, he was apparently not acting in the ward's best interest by proposing to the court in the "Agreed Order" that his brother be appointed as the ward's guardian of the property (conservator).

On these facts, we find that the court's citation issued to Mr. Longino was sufficient notice to enable him to answer the charge that there was cause to revoke his letters on the above-stated grounds. We also note that, as part of the citation issued to Mr. Longino, the court appointed a guardian ad litem for the ward. Prior to the hearing at which Mr. Longino testified, the guardian ad litem interviewed him with respect to the above-stated grounds related to the Smith Barney trust and the proposed appointment of his brother as guardian of the property (conservator), and filed a written answer to the court in response to the citation which discussed those grounds. Mr. Longino testified under oath at the hearing that he was "here to explain to this court what the documentation, I believe in the court file, shows has occurred, and to explain further with some facts that are not in the file, and to respond to the answer of the Guardian Ad Litem." Thereafter, Mr. Longino testified about the above-stated grounds later considered by the court in its revocation order. It follows that Mr. Longino expressly or by implication consented to the court's consideration of those grounds in the order revoking his letters. OCGA § 9-11-15 (b); *Greene v. Woodard*, 198 Ga. App. 427, 428 (401 SE2d 617) (1991) (provisions of the Civil Practice Act apply to the probate court as a court of record).

2. We find no merit in Mr. Longino's contention that the probate judge erred by denying his recusal motion. According to the affidavit filed by Mr. Longino in support of the motion, because the court's citation stated that the costs of the proceeding would be charged to him personally, this showed that the judge was biased and had pre-judged his fitness prior to conducting an investigation. The judge ruled that the affidavit was insufficient and denied the motion to recuse without referring the matter to another judge. Uniform Probate Court Rules 19.1 and 19.2.

Under the Code of Judicial Conduct, "Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party or a party's lawyer. . . ." Canon 3 (E) (1) (a).

> In order to be disqualifying[,] the alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. The alleged bias of the judge must be of such a nature and intensity to prevent [the movant] from obtaining [consideration of the case] uninfluenced by the court's prejudgment. To warrant disqualification of [a judge] the affidavit supporting the recusal motion must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.

(Citations and punctuation omitted.) *Birt v. State*, 256 Ga. 483, 485-486 (350 SE2d 241) (1986). Applying these standards, we find that the source of the alleged bias was not extra-judicial and that it does not show that a reasonable person would conclude that the judge harbored a bias of such nature and intensity that it would prevent or impede her exercise of impartial judgment. *In the Interest of J. E. T.*, 269 Ga. App. 567, 570-571 (604 SE2d 623) (2004). Accordingly, we conclude that the statement in the citation that costs would be charged to Mr. Longino was not legally sufficient to support recusal and that the judge did not abuse her discretion by denying the motion without referring the matter to another judge. Id. at 570.

3. We find no error in the probate court's ruling that it did not have jurisdiction to rule on the petition seeking an order from the court voiding the trust created by Mr. Longino's brother for the benefit of the ward and seeking return of the assets in the trust to the ward. "Trusts of every kind, not generally cognizable at law, are peculiarly subjects of equity jurisdiction." OCGA § 53-12-4. Equity jurisdiction is in the superior court, not the probate court. *Logan v. Nunnelly*, 230 Ga. 588 (198 SE2d 321) (1973); *Evans v. Little*, 246 Ga. 219, 221 (271 SE2d 138) (1980). Moreover, the probate court had no jurisdiction to determine conflicting claims of title to property between the trust and the ward. *In re Estate of Adamson*, 215 Ga. App. 613-614 (451 SE2d 501) (1994); compare OCGA § 15-9-127 (giving probate courts concurrent jurisdiction with superior courts over the appointment and resignation of trustees); see comment following OCGA § 53-12-4 (noting that causes of action involving internal affairs of a trust, as opposed to appointment or resignation of trustees, are generally the subject of equity jurisdiction).

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED AUGUST 31, 2006 —
RECONSIDERATION DENIED SEPTEMBER 20, 2006 — 

*John T. Longino*, pro se.

*Pinkie T. Toomer, Willie J. Lovett, Jr., Claudia P. Campo*, for appellee.

*Fellows, Johnson & La Briola, Henry D. Fellows, Jr., Thomas K. Wingfield*, amici curiae.