## A09A1602. IN THE INTEREST OF HUDSON.

(685 SE2d 323)

ELLINGTON, Judge.

John Drummond (hereinafter, "the administrator"), the administrator of the estate of his mother, Daisy Hudson, filed a petition in the Probate Court of Cobb County for a settling of account by his sister, Lynda Drummond (hereinafter, "the conservator"), for the funds she handled in her capacity as conservator for Hudson while she was incapacitated. After a hearing, the probate court entered judgment against the conservator in the amount of $38,428.27. The conservator appeals, contending the probate court erred in considering an offer of settlement and in relying upon documents that were not admitted into evidence. Further, the conservator contends that the probate court's final settlement is not supported by the evidence adduced at the hearing and that the probate court erred in granting relief in favor of Hudson's estate on a claim for breach of fiduciary duty asserted by the administrator. For the reasons explained below, we affirm in part and reverse in part.

Because the trial court sits as the trier of fact when settling a conservator's accounts,[1]

> its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When the evidence is uncontroverted and no question of witness credibility is presented, however, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

---

[1] OCGA § 29-5-81 (c) (after an interested person petitions the probate court for a final settlement of a conservator's accounts and the conservator and others are given notice of the proceedings, "the court shall proceed to examine all returns and accounts of the conservator during the settlement period and to hear any objection to the settlement and discharge").

(Citations omitted.) *Stoker v. Severin*, 292 Ga. App. 870, 871 (665 SE2d 913) (2008).

In this case, it is undisputed that on November 9, 2004, the probate court issued the conservator letters of guardianship of Hudson's person and property;[2] Hudson was then 80 years old and suffering from early Alzheimer's disease. In connection with her appointment, the conservator posted the required bond for the faithful discharge of her duties[3] in the amount of $20,000. The probate court increased the required bond to $165,000, in connection with the sale of Hudson's residence in August 2006. Hudson died intestate on November 9, 2006, leaving three heirs: the conservator, the administrator, and their sister. Following Hudson's death, the probate court entered an order, based on the consent of all three of Hudson's heirs, declaring that no administration of the estate was necessary. Relying on this order, the conservator distributed Hudson's remaining estate of $130,437 equally among the heirs, with each receiving $43,479. The probate court later entered a consent order vacating the "no administration necessary" order and appointed the administrator to administer Hudson's estate. The administrator then filed the instant petition for a final settlement of the conservator's accounts.

At the hearing on the administrator's petition for final settlement of the conservator's accounts, the probate court received the following evidence. First, the conservator testified on cross-examination regarding her management of her mother's finances. The conservator testified that in 2003 she had lent Hudson $6,620, so that Hudson could pay her real property taxes, and that she reimbursed herself out of Hudson's income during the conservatorship. She also testified that on several occasions during the conservatorship she used her own funds to pay Hudson's expenses and, without specific authorization from the probate court, reimbursed herself out of Hudson's income. In addition, she testified that she deposited most of the proceeds from the sale of Hudson's residence into her own investment account and made disbursements from that account, rather than maintaining all of Hudson's funds in the conservatorship account.

With regard to the amount of Hudson's income and expenses

---

[2] As part of the comprehensive revision of Title 29 (Guardian and Ward), effective July 1, 2005, the term "conservator" was substituted for the office formerly designated as the "guardian of the property" of an incapacitated adult. See OCGA § 29-5-1 (2004); Ga. L. 2004, pp. 161, 251-252, § 1 (revised OCGA § 29-5-1); *In re Longino*, 281 Ga. App. 599, n. 1 (636 SE2d 683) (2006).

[3] See OCGA §§ 29-5-40 (bond requirement); 29-5-41 (a) (3) (conservator's bond to be conditioned upon the faithful discharge of the conservator's duty).

during the conservatorship, the conservator testified that, for the period from November 9, 2004, through October 12, 2005, Hudson's income was $30,181 and she expended $30,255 on Hudson's behalf. The conservator testified that the return she filed for this period contained an error, in that it showed income of $32,364; thus, she had overestimated Hudson's income by $2,183.

The conservator testified that, for the period from November 10, 2005, through November 27, 2006, during which the conservator sold Hudson's residence and Hudson died, Hudson's income was $199,497 and that the conservator expended $38,016 on Hudson's behalf. The conservator testified that the return she filed for this period contained two errors, in that the balance forward was inaccurate and the return showed income of $198,274. Thus, for this period, the conservator had under-reported Hudson's income by $1,223.

For the period of November 28, 2006, through the final distribution to Hudson's heirs, the conservator's final return showed receipts of $3,978 and disbursements as follows: Hudson's final medical expenses, funeral expenses, and filing fees totaling $28,526; a commission for her service as conservator in the amount of $7,382;[4] and the distribution to the heirs totaling $130,437.

To summarize the conservator's testimony, she testified that Hudson's income during the conservatorship totaled $233,656 and that she disbursed a total of $234,616: Hudson's expenses in the amount of $96,797; a commission of $7,382 for serving as conservator; and the remainder of $130,437 divided among the heirs. The errors contained in the two annual returns collectively resulted in the conservator's over-reporting Hudson's income during the conservatorship by $960. Because the disbursements equaled the reported income, the conservator disbursed $960 more than was available from Hudson's funds.

Next, the administrator testified regarding his analysis of the conservator's records for the conservatorship. The administrator testified that he compared the conservator's returns to the bank statements for the conservatorship account, the conservator's receipts and records of Hudson's expenses, and bank records for the conservator's personal accounts. He testified that he had determined that, during the two-year period of the conservatorship, Hudson received $246,793.38 in income, $12,177.38 more in income than the conservator disclosed in the returns she filed with the court. He based his calculation of her income in part on *expected* benefit payments, without referring in every case to documents evidencing

---

[4] See OCGA § 29-5-50 (providing for compensation of a conservator).

the actual payments. In addition, in terms of Hudson's expenses, the administrator testified he could confirm through checks and other charges paid out of the conservatorship account only $223,692.26 in disbursements, which was $10,923.74 less than the conservator had reported in the returns she filed with the court. Finally, he testified that the conservator had transferred $11,205.40 from Hudson's account into her personal account. The administrator prepared a spreadsheet based on the conservator's records and referred to it during his testimony. During the hearing, the administrator's counsel tendered, and the probate court received into evidence, only one exhibit: the bank statement for the conservatorship account for the period November 10, 2004, through December 14, 2004.

In its order entering judgment against the conservator, the probate court cited two statutes as authority for its ruling. First, the probate court cited OCGA § 29-5-81, which authorizes the court to enter judgment against the conservator for any sums found in the final settlement of accounts to be due from the conservator.[5] In addition, the probate court cited OCGA § 29-5-93, which authorizes a ward or her representative to bring a cause of action against the conservator for breach of fiduciary duty and to seek damages, an injunction, or payment of money to remedy the breach.[6] The court found that, by the conservator's own admission, she had filed returns containing errors and failed to correct those returns. With regard to the amount of Hudson's income and expenses during the conservatorship, the court found that the conservator had under-reported Hudson's income by $10,886.24.[7] The court determined that, among the reported expenses of $96,797 (excluding the distribution to the heirs and her commission), the conservator failed to verify $8,954.63 in expenses.[8] The court found that, without the approval of the court,

---

[5] See OCGA § 29-5-81 (d) (following a hearing on a petition for final settlement, the court "shall issue a judgment, writ of fieri facias, and execution thereon for any sums found to be due from the conservator").

[6] Pursuant to OCGA § 29-5-93 (a),
[i]f a conservator commits a breach of fiduciary duty . . . , a ward or an interested person on behalf of the ward shall have a cause of action as appropriate: [t]o recover damages; [t]o compel performance of the conservator's duties; . . . or [t]o compel the redress of a breach of fiduciary duty by payment of money or otherwise.
Although the conservator did not bring such a claim in writing, we have concluded, as discussed in Division 4, infra, that the issue of whether the conservator breached her fiduciary duty was litigated by the implied consent of the parties.

[7] By this calculation, the court implicitly found that Hudson's total income during the conservatorship was $245,502.24.

[8] By imposing judgment for $8,954.63 in unverified expenses the court implicitly approved $87,842.37 in expenses (excluding the distribution to the heirs and the conservator's commission). We note that the probate court determined that "[t]otal expenses by check were $56,791.66[,]" excluding the proceeds from the sale of the house that the conservator transferred from the conservatorship account to her own investment account, but this figure

the conservator had transferred $11,205.40 from Hudson's account into her personal account and was liable to the estate for that amount. In addition, the court determined that the conservator by her own admission had commingled the proceeds from the sale of Hudson's home with her own funds. Based on its findings that the conservator had breached her fiduciary duty by filing erroneous returns, commingling funds, and otherwise mismanaging the account, the court disallowed the commission the conservator had taken of $7,382. The probate court entered judgment against the conservator in the amount of $38,428.27, the sum of the under-reported income, the unverified expenses, the unapproved transfers into her personal account, and the disallowed commission.

1. The conservator contends that the probate court erred in considering an offer of compromise and settlement.[9] The record shows that, before the hearing on the administrator's motion to settle the conservator's accounts, the administrator and the conservator's surety agreed that the surety would pay Hudson's estate $25,000 to settle the estate's claim that the conservator improperly retained Hudson's funds. The probate court notified the conservator of the proposed settlement, and the conservator filed an objection. The probate court commenced the hearing on the administrator's motion to settle the conservator's accounts by asking the conservator the basis for her objection to the proposed settlement. After verifying that the conservator did not consent to the proposed settlement, the probate court moved forward with the final settlement of the conservator's accounts. After the conservator testified on cross-examination and the administrator testified, the probate court called on the conservator to present documentation "to prove to [the court] that [she] handled the distributions in the management of [her mother's] guardianship appropriately." Nothing in the record indicates that the probate court assigned any probative value to the fact that the administrator and the surety had agreed to settle the estate's claim against the conservator. Accordingly, this argument lacks merit.

2. The conservator contends the probate court erred in relying on the conservator's bank statements and receipts, when none of those documents was offered as an exhibit and admitted into evidence at the hearing.[10]

---

covered only the period from January 1, 2005, through November 10, 2006, and did not include Hudson's final medical bills, funeral expenses, and other items listed in the conservator's final return.

[9] See OCGA § 24-3-37 ("admissions or propositions made with a view to a compromise are not proper evidence").

[10] The conservator also contends that the probate court erred in relying on the

It is axiomatic that the finder of fact must determine the facts of a case from the evidence, and not from matters extrinsic to the record. As noted above, the record shows that only one exhibit was tendered at the hearing and formally admitted into evidence: the first bank statement for the conservatorship account. At the hearing, the administrator's counsel filed with the clerk what purported to be the conservator's response to the administrator's request for admissions and financial documents she produced in response to discovery requests. In filing the documents, counsel said "I'm not tendering [the discovery responses and documents] as evidence," and the probate court did not formally admit them into evidence. Despite counsel's decision not to tender the documents, however, the judgment on its face shows that the probate court considered the conservator's financial records as substantive evidence in its calculations. Because the contested documents were not offered and admitted into evidence, they do not constitute evidence in this case, and the probate court erred in considering them. See *Forsyth v. Peoples, Inc. of Rome*, 114 Ga. App. 726, 728 (3) (152 SE2d 713) (1966) (discovery responses cannot be considered by the finder of fact unless and until they are offered and admitted into evidence).

Still, "[w]hen a trial judge [sitting as the finder of fact] considers both admissible and inadmissible evidence, it is presumed that [the judge] separates the wheat from the chaff; and [the resulting] judgment will not be reversed where there is legal evidence to support it." (Citation and punctuation omitted.) *In the Interest of M. L. P.*, 236 Ga. App. 504, 511 (2) (512 SE2d 652) (1999). Even assuming that this principle extends to documents that were filed with the clerk but were never tendered into evidence,[11] we conclude that the contested documents cannot be considered legal evidence under the hearsay rule. Although the administrator argues that the conservator waived any error by failing to raise a hearsay objection, hearsay evidence completely lacks any probative value unless it comes within a recognized exception to the hearsay rule, and the opposing party's failure to object to the introduction of hearsay evidence does not give the evidence "any weight or force whatever in establishing a fact." *In re Burton*, 271 Ga. 491, 494 (3) (521 SE2d 568) (1999); see also *Barich v. Cracker Barrel Old Country Store*, 244 Ga. App. 550, 551 (1) (536 SE2d 221) (2000).

---

spreadsheet prepared by the administrator. It appears from the record, however, that the court used the spreadsheet only as a supplement to the court's own notes about the content of the administrator's testimony, without assigning it any separate probative value.

[11] But see Paul S. Milich, Georgia Rules of Evidence, § 3.2 (2002) (One of the "basic purposes for the rules governing evidentiary objections . . . [is] to make a clear and complete record for appellate review.") (footnote omitted).

346

Upon the proper foundation, the bank statements and similar documents at issue in this case may have been admissible under the exception pertaining to business records.[12] Having reviewed the appellate record, however, we conclude that the administrator failed to lay the foundation necessary for the probate court to determine whether each document qualified as a business record.[13] Accordingly, the documents at issue cannot be counted among the legal evidence underpinning the probate court's judgment. See Division 3, infra.

3. The conservator contends that no evidence adduced at the hearing supported the probate court's findings regarding the amount of three of the components of the judgment, specifically, the under-reported income, the unverified expenses, and the unapproved transfers into the conservator's personal account. We agree.

The probate court's calculation that Hudson's total income during the conservatorship was $245,502.24 is not supported by any witness's testimony or by any other legal evidence in this record. Thus, the probate court's finding that the conservator under-reported Hudson's income by $10,886.24 is not supported by any evidence. In addition, the probate court's calculation that the conservator failed to verify $8,954.63 in expenses is not supported by testimony or by any other legal evidence in this record.

Further, although the probate court's finding that the conservator had transferred $11,205.40 from Hudson's account into her personal account matched the amount calculated by the administrator, that witness lacked any personal knowledge about the transfers. As a result, the conservator's testimony explaining that those transfers represented payment for Hudson's expenses stands uncontradicted by any competent evidence in the record. Further, we cannot determine from this record to what extent such transfers reflect amounts already included in the $8,954.63 assessed against the conservator for unverified expenses.

Because the probate court's calculation of the amount of the under-reported income, the unverified expenses, and the unapproved transfers into the conservator's personal account cannot be sup-

---

[12] See OCGA § 24-3-14 (b) (a business record may be admissible upon a finding that "it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter").

[13] See *Santana v. State*, 283 Ga. App. 696, 698 (1) (642 SE2d 390) (2007) (a document may be admissible upon the testimony of an officer or employee of a business that created the document that the record was made in the regular course of business, and at the time of the event or within a reasonable time of the event); *Ross v. State*, 298 Ga. App. 525 (680 SE2d 435) (2009) (a document may be admissible upon the testimony of an officer or employee of a business that received the document that the recipient received, relied upon, and retained the document in the regular course of its business).

ported solely by reference to the testimony of the witnesses at the hearing and the single documentary exhibit that was formally received into evidence, we reverse the probate court's final settlement of accounts pursuant to OCGA § 29-5-81 as to these components of the judgment. The probate court was authorized to disallow the commission the conservator had taken of $7,382, however, based on the conservator's admitted failure to file correct annual returns, commingling of funds, and other mismanagement.[14] Accordingly, we affirm this portion of the probate court's final settlement of accounts and remand for entry of judgment in accordance with this opinion.

4. The conservator contends the trial court erred in entering judgment against her for breach of fiduciary duty, since the administrator did not file a pleading asserting such a claim and she was not given the opportunity to demand a jury trial. OCGA § 29-5-93 (a) (4) authorizes a ward or an interested person on behalf of the ward to bring a cause of action against the conservator for a breach of fiduciary duty and may seek, among other remedies, redress of the breach "by payment of money or otherwise." Hudson's inchoate cause of action did not abate when she died.[15]

Although the record shows that the administrator did not bring a claim pursuant to OCGA § 29-5-93 (a) (4) in writing, but sought only an accounting pursuant to OCGA § 29-5-81, the conservator did not object when the administrator raised the issue at the hearing. As a result, we conclude that the issue of whether the conservator breached her fiduciary duty was litigated by the implied consent of the parties. OCGA § 9-11-15 (b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Conner v. Conner*, 269 Ga. 112, 113 (1) (499 SE2d 54) (1998); *Ray v. Nat. Health Investors*, 280 Ga. App. 44, 47-48 (2) (633 SE2d 388) (2006). This argument therefore presents no separate basis for reversal. Nonetheless, the probate court's judgment must be reversed in part for the reasons explained in Division 3, supra.

5. In light of the foregoing, the administrator's motion for a

---

[14] See OCGA § 29-5-50 (e) ("Conservators who fail to make annual returns as required by law shall forfeit all commission for transactions during the year within which no return is made unless the court, upon cause shown, shall by special order entered on the record, relieve the conservator from the forfeiture."); *Marshall v. C & S Nat. Bank*, 54 Ga. App. 123, 131 (187 SE 240) (1936) ("No reason can be seen why mismanagement of the guardian such as would authorize his removal would not be ground for denying him commissions in a final settlement of his accounts[.]").

[15] See OCGA § 9-2-41 (No "cause of action for the recovery of damages for . . . injury to the person . . . [shall] abate by the death of either party. The cause of action, in case of the death of the plaintiff and in the event there is no right of survivorship in any other person, shall survive to the personal representative of the deceased plaintiff.").

frivolous appeal penalty is hereby denied.

*Judgment affirmed in part and reversed in part, and case remanded. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 24, 2009 —
RECONSIDERATION DENIED OCTOBER 7, 2009 — 

*Cauthorn & Nohr, Thomas E. Cauthorn III, Leslie A. Dean*, for appellant.

*Reeves & Reeves, Charles F. Reeves, Jr., C. Fred Reeves, Howard, Clark & Mercer, Glen W. Clark, Jr., Chandler R. Bridges*, for appellee.