**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2017**

# In the Court of Appeals of Georgia

A16A1682. IN RE ESTATE OF JACQUELINE GLADSTONE.

A16A1683. IN RE ESTATE OF JACQUELINE GLADSTONE.

REESE, Judge.

The probate court appointed Emanuel Gladstone as conservator for his wife (the "ward"), who suffered from dementia. The probate court later removed Gladstone from office, finding that he had breached his fiduciary duties, and entered a $317,000 judgment against him and Ohio Casualty Insurance Company (the "surety"). In these companion appeals, Gladstone and the surety challenge the judgment. For the reasons set forth, infra, we affirm.

In October 2014, Gladstone filed a petition for the appointment of a conservator for the ward in light of a proposed inheritance that she was to receive. The probate court appointed an attorney for the ward and later appointed Gladstone

as conservator, setting a bond at $430,000. After the surety posted the bond, the court issued letters of conservatorship on February 3, 2015.

Gladstone filed an inventory and asset management plan in April 2015, which included a budget listing the ward's monthly income as $809 and her monthly expenses as $10,513. The ward's attorney objected, requesting documentation of various items, including some of the monthly expenses and the status of the inheritance. After a hearing in June 2015, the court directed Gladstone to provide additional information to the ward's attorney, deferring approval of the asset management plan.

At a hearing two months later, in August 2015, the ward's attorney reported that the attorney remained unable to consent to the asset management plan because Gladstone had still not provided her with the requested documentation. In the resulting order, the court noted that the expenditures being made by Gladstone were unapproved because, due to Gladstone's delays, the asset management plan still had not been approved. The court noted that Gladstone's interim report was due by September 3, 2015, and ordered the ward's attorney to file a response to the interim report, when filed.

Gladstone filed the interim report, listing receipts and expenditures between February 3 and July 15, 2015. In response, the ward's attorney raised additional concerns and concluded that the county conservator should be appointed to evaluate the ward's financial needs and review the unapproved expenditures that Gladstone had reported. Another hearing was set for October 21, 2015, and Gladstone again failed to produce the requested information. The probate court suspended Gladstone and appointed a temporary substitute conservator to evaluate the ward's financial needs and review the unapproved expenses.

The temporary substitute conservator reported, inter alia, that, around October 21, 2015, Gladstone had removed approximately $80,000 from the ward's account via checks written to himself. In December 2015, the probate court suspended Gladstone and ordered him to appear and submit to a final settlement of his accounts under OCGA § 29-5-81.

After a hearing at which Gladstone, his attorney, counsel for the surety, and counsel for the ward appeared, the probate court issued an order removing Gladstone from office and entering judgment against Gladstone and the surety for $167,000 for breach of fiduciary duty and for $150,000 in sanctions labeled as "punitive

damages."[1] The court also directed Gladstone's attorney to return $10,000 in attorney fees to the substitute conservator, reducing the total judgment against Gladstone and the surety, as neither Gladstone nor his attorney had presented evidence to support the payment of such fees. The court retroactively approved expenses of $8,678 per month for the nine months that Gladstone had been in office (totaling $78,102) plus certain one-time expenses. The court found the shortfall in funds that had been delivered to the successor conservator to be between $167,576.20 and $189,228.31; thus, the court entered judgment against Gladstone and the surety in the amount of $167,000 on the settlement of accounts and as damages for his breach of fiduciary duty.

The court also awarded punitive damages in the amount of $150,000 based on Gladstone's "failure to disclose his conflict of interest [i.e., his claims against the estate], his diversion of Conservatorship assets, [and] the looting of the Conservatorship account by the Suspended Conservator's attorney and the Conservator on the eve of his suspension." The court awarded a total judgment of $317,000. These appeals followed.

---

[1] See Division 4, infra.

Because the trial court sits as the trier of fact when settling a conservator's accounts, its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When the evidence is uncontroverted and no question of witness credibility is presented, however, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

With these guiding principles in mind, we turn now to the appellants' specific claims of error.

*Case No. A16A1682*

1. Gladstone argues that the probate court erred in failing to adopt his proposed asset management plan, which he filed based on his knowledge of the ward's needs and as her designated health care agent.

OCGA § 29-5-30 (a) requires a conservator to file an inventory of the ward's property and an asset management plan within two months of appointment. The asset management plan "must be based on the *actual* needs of the ward and take into consideration the best interest of the ward."[3] "The plan and any proposed budget for

---

[2] *In re Hudson*, 300 Ga. App. 340 (685 SE2d 323) (2009) (citation, punctuation, and footnote omitted).

[3] OCGA § 29-5-30 (c) (emphasis supplied).

5

the expenditure of funds in excess of the anticipated income from the property must be approved by the court."[4]

Here, the letters of conservatorship directed Gladstone not to spend the ward's funds without a court order for any purpose except as set forth in the court-approved budget. The ward's attorney requested documentation and explanation of some of the budgeted items in the proposed asset management plan in order to determine whether they were based on the ward's actual needs and to determine the status of the ward's pending inheritance. Despite his attorney's promises that he would provide this documentation to the ward's attorney, Gladstone failed to do so.

Gladstone complains that the probate court erred in placing more confidence in the court-appointed attorney for the ward than in him, the ward's husband. Gladstone cites no supporting case law, but argues that there is a conflict between the statutes "regarding a probate court's obligation to approve a Plan submitted by a Conservator who is also the Health Care Agent for a ward."

---

[4] Id.

Under the facts of this case, we see no conflict between OCGA § 31-32-7,[5] which authorizes a health care agent to contract for health care services on behalf of the declarant,[6] and OCGA § 29-5-30 (c). OCGA § 31-32-7 does not give a health care agent unfettered authority but requires him to use "due care" in acting for the benefit of the declarant, to act in the declarant's "best interest" when the declarant's intentions and desires are unclear,[7] and to act only as "reasonably necessary" to implement the powers granted to him.[8] Similarly, OCGA § 29-5-30 (c) requires the conservator to take into consideration the ward's "best interest" and "actual needs" in making an asset management plan.

---

[5] Specifically, a health care agent shall act in accordance with the terms of the advance directive for health care and, in so doing, may enter into agreements and otherwise act as reasonably necessary to implement the powers granted to him. OCGA § 31-32-7 (b), (d). The advance directive may allow the health care agent, inter alia, "to contract for any health care facility or service in the name of and on behalf of the declarant and to bind the declarant to pay for all such services, and the health care agent shall not be personally liable for any services or care contracted for or on behalf of the declarant." OCGA § 31-32-7 (e) (3).

[6] A "declarant" in this context is "a person who has executed an advance directive for health care." OCGA § 31-32-2 (3).

[7] OCGA § 31-32-7 (b).

[8] OCGA § 31-32-7 (d).

7

Based on the questions raised by the ward's attorney, the probate court did not err in ordering Gladstone to provide documentation of the expenses in the asset management plan to demonstrate that the monthly expenses, which exceeded the ward's monthly income, were based on her actual needs.[9] Because Gladstone failed to document the expenses, the probate court did not err in refusing to approve the asset management plan.

2. Gladstone contends that the probate court erred in finding that he breached his fiduciary duty and in denying his claims relating to the care he personally provided for the ward.

The probate court set a final hearing on a settlement of accounts, pursuant to OCGA § 29-5-81 (a), and ordered Gladstone to bring with him "all books and records, including, but not limited to, bank statements, cancelled checks, credit card records, and debit card records, reflecting his collection and expenditure of funds belonging to [the] [w]ard from January 21, 2015, to the date of the hearing."

Although Gladstone complains about the probate court's reliance on documents not in evidence (such as bank statements and checks showing more than $80,000 in withdrawals on the eve of his suspension), Gladstone's attorney acknowledged at the

---

[9] See OCGA § 29-5-30 (c).

8

hearing that the withdrawals constituted Gladstone's "compensation for taking care of Mrs. Gladstone between the hours of 8:00 p.m. to 8:00 a.m. at the rate of $16 an hour." This judicial admission is conclusive and binding.[10] Gladstone does not argue that this compensation was approved by the probate court; instead, the letters of conservatorship directed Gladstone to keep the ward's funds separate from his own and not to spend any of her funds without court approval.

Because there is some evidence to support the probate court's findings of fact that Gladstone withdrew more than $80,000 in payments to himself on the eve of his suspension and that Gladstone failed to account for at least $167,000 in funds belonging to the ward, we will not interfere with the court's finding that Gladstone breached his fiduciary duty and its award of damages in that amount.[11]

---

[10] See *Jabaley v. Jabaley*, 208 Ga. App. 179 (1) (430 SE2d 119) (1993) ("[A]n admission [in judicio] is conclusive; it is binding upon the party and estops the party from denying the admission or introducing any evidence to controvert such admission, even if the admission is not true.") (citation and punctuation omitted).

[11] See *In re Estate of Zeigler*, 295 Ga. App. 156, 158-159 (2) (a) (671 SE2d 218) (2008).

3. Gladstone complains that the probate court erred by conducting an inquiry pursuant to OCGA § 29-5-70[12] without giving him notice.

This argument is without merit as the probate court did not conduct such an inquiry. As discussed in Division 2, supra, the probate court conducted a final hearing on a settlement of accounts, pursuant to OCGA § 29-5-81 (a).

4. Gladstone argues that the probate court erred in awarding "punitive damages"[13] of $150,000 because punitive damages were not specifically pled in the relief sought by the substitute temporary conservator.

Under OCGA § 29-9-14, "[t]he court on its own motion may order a hearing on any matter related to a conservatorship or guardianship even if no objection is filed." Compliance with Chapter 9 is generally sufficient for proceedings that arise under Title 29.[14] Although Title 29 does not explicitly provide for "punitive"

---

[12] Under OCGA § 29-5-70 (a), "the court may conduct a judicial inquiry into whether the ward is being denied a right or privilege provided for by this chapter and may issue appropriate orders."

[13] Although the probate court refers to this award as "punitive damages," it is more properly considered sanctions for the reasons set forth, infra.

[14] See OCGA § 29-9-1.

damages,[15] it does allow the court to impose "sanctions." Under OCGA § 29-5-92 (a), "whenever it appears to the court that good cause may exist to revoke or suspend the letters of conservatorship or to impose sanctions, the court shall cite the conservator to answer the charge." "Upon investigation, the court may, in its discretion: . . . [r]educe or deny compensation to the conservator or impose *any other sanction or sanctions* as the court deems appropriate[.]"[16]

Here, the probate court issued a "citation" on December 9, 2015, with notice to both Gladstone and the surety, advising Gladstone that his actions would be examined, inter alia, in connection with OCGA § 29-5-92 and other statutes. The court ordered him and the surety to appear at a hearing on January 15, 2016, and show cause why the letters of conservatorship should not be revoked, why the court should not find that Gladstone had breached his fiduciary duty, "and why damages or other redress should not be ordered." By way of this citation, the probate court thus

---

[15] See OCGA § 29-5-93 (a) ("If a conservator commits a breach of fiduciary duty or threatens to commit a breach of fiduciary duty, a ward or an interested person on behalf of the ward shall have a cause of action as appropriate: (1) To recover damages; (2) To compel performance of the conservator's duties; (3) To enjoin the commission of a breach of fiduciary duty; or (4) To compel the redress of a breach of fiduciary duty by payment of money or otherwise.").

[16] OCGA § 29-5-92 (b) (4) (emphasis supplied).

11

put Gladstone and the surety on notice that it could award "sanctions" under OCGA § 29-5-92 (b) (4).

In its final order, the probate court concluded that Gladstone's conduct "constitute[d] aggravating circumstances sufficient for the imposition of punitive damages to penalize, punish, and deter future similar conduct." Although the court did not specifically reference OCGA § 51-12-5.1, it employed the language of § 51-12-5.1 (a)[17] in imposing punitive damages. In support of its award, the court relied on case law, which stands for the general proposition that "punitive damages are available against defendants who breach a fiduciary duty"[18] and which is not necessarily tethered to OCGA § 51-12-5.1.

---

[17] OCGA § 51-12-5.1 (a) provides: "As used in this Code section, the term 'punitive damages' is synonymous with the terms 'vindictive damages,' 'exemplary damages,' and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant."

[18] *Jonas v. Jonas*, 280 Ga. App. 155, 163 (3) (d) (633 SE2d 544) (2006) (citing *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 223 (2) (493 SE2d 622) (1997)).

In light of the probate court's role as the finder of fact[19] and the right-for-any-reason doctrine,[20] we conclude that the court properly awarded punitive damages in this case. The citation put Gladstone and the surety on notice that Gladstone's actions would be examined in connection with OCGA § 29-5-92, and the record supports the court's conclusion that sanctions in the form of punitive damages were appropriate. Compliance with the procedural requirements of OCGA § 51-12-5.1 (d)[21] was not necessary.[22] We find no reversible error.

---

[19] See *Hudson*, 300 Ga. App. at 340.

[20] See *Bagwell v. Trammel*, 297 Ga. 873, 876 (1) (778 SE2d 173) (2015) (affirming trial court's denial of party's specific performance claim, following a bench trial, pursuant to the right-for-any-reason rule).

[21] Section 51-12-5.1 (d) of Title 51, "Torts," requires that the complaint include a specific prayer for an award of punitive damages and that the court hold a bifurcated trial to determine first the issue of liability for punitive damages before the trier of fact hears evidence on the appropriate amount of damages.

[22] See OCGA § 29-9-1 ("Compliance with the provisions of this chapter shall be deemed to be sufficient for proceedings in the court arising under [Title 29. Guardian and Ward] except as otherwise provided in Chapter 11 of Title 9 [Civil Practice Act] and Chapter 9 of Title 15 [Probate Courts]."); see also *In re Longino*, 281 Ga. App. 599, 601 (1) (636 SE2d 683) (2006) (finding that written citation was sufficient notice under predecessor to OCGA § 29-5-92 to enable guardian of a ward's property to answer the charge that there could be cause to revoke his letters of guardianship).

5. Gladstone contends that the probate court erred in ordering his attorney to reimburse the ward's account the $10,000 in fees Gladstone had paid him from the account because there was no testimony to prove the payment to counsel or cancelled checks or bank statements in evidence.

As in Division 2, supra, Gladstone complains about the probate court's reliance on documents not in evidence. His attorney, however, acknowledged at the hearing that two checks of $5,000 each were given to his firm from the conservatorship account for legal services provided to Gladstone in his capacity as conservator. This constitutes a judicial admission.[23] Neither Gladstone nor his attorney provided documentation or an explanation that these expenses were for the conservatorship. The probate court thus did not clearly err in finding that Gladstone's attorney was liable to the ward for this amount.[24]

---

[23] See *Jabaley*, 208 Ga. App. at 179 (1).

[24] See OCGA § 29-5-63 ("If the court finds that the conservator is liable to the ward, the court shall enter a judgment against the conservator and any surety in the amount of such liability.").

6. The surety argues that the probate court erred in imposing punitive damages against it because the surety bond covered only actual damages. Based on the plain language of the bond and applicable statutes, we disagree.

"The bond of a conservator shall be . . . [c]onditioned upon the faithful discharge of the conservator's duty[.]"[25] "The conservator and any surety shall be held and deemed joint and several obligors,"[26] and "[i]n all cases where letters of conservatorship are revoked, any surety on the bond shall be liable for all acts of the conservator in relation to the trust up until the time of the settlement with the new conservator or the ward."[27] While "the surety's liability will not be extended by implication or interpretation,"[28] "[s]ureties . . . are jointly and severally liable with their principal unless the contract provides otherwise."[29]

---

[25] OCGA § 29-5-41 (a) (3).

[26] OCGA § 29-5-46.

[27] OCGA § 29-5-49 (d).

[28] OCGA § 10-7-3.

[29] OCGA § 10-7-1.

Here, the probate court found that punitive damages were appropriate based on "[t]he actions and omissions of [Gladstone] including, but not limited to, the failure to disclose his conflict of interest, his diversion of Conservatorship assets, the looting of the Conservatorship account by the Suspended Conservator's attorney and the Conservator on the eve of his suspension." This constituted aggravating circumstances sufficient to impose punitive damages "to penalize, punish, and deter future similar conduct." The court thus concluded that "punitive damages should be imposed against [Gladstone] and his surety." Although the surety cites extensive case law from other jurisdictions and argues that it did nothing to warrant punishment, we have held that "[r]ecovery of punitive damages in the liability context does *not* contravene public policy."[30]

Although OCGA § 29-5-41 (c) requires that a conservator's bond "be in a value equal to the estimated value of the estate," if it is secured by a licensed commercial surety, it does not necessarily follow, as the surety argues, that recovery is limited to

---

[30] *Lunceford v. Peachtree Cas. Ins. Co.*, 230 Ga. App. 4, 8 (2) (495 SE2d 88) (1997) (citation omitted; emphasis in original).

actual loss. Under Georgia law, we must turn to the language of the bond itself to see what the surety agreed to indemnify.[31]

First, we note that the probate court ordered that "[l]etters of conservatorship shall issue to such . . . conservator[] upon taking the required oath and upon the conservator[] posting bond in the amount of [$430,000]." The bond provided that Gladstone and the surety were:

> held and firmly bound unto [the probate judge] and the successors in said office, in the just and full sum of [$430,000], for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally. . . . Now should [Gladstone] well and truly demean [himself] as such as aforesaid named, and faithfully discharge all of the duties required by law, then the above obligation to be satisfied and void, otherwise to remain in full force and effect.

At the settlement-of-accounts hearing, the surety introduced into evidence both the bond and the bond application. Because Gladstone failed to discharge all of his duties

---

[31] See *R. J. Griffin & Co. v. Continental Ins. Co.*, 230 Ga. App. 822, 823 (497 SE2d 586) (1998) ("[N]o construction of a surety's bond is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation.") (citation and punctuation omitted).

faithfully, both he and the surety are jointly and severally liable up to the amount of the bond.[32]

7. The surety contends that the requisite procedures for imposing punitive damages were not followed.

(a) For the reasons stated in Division 4, supra, we reject the argument that there was no notice of any claim for punitive damages.

(b) In addition, the surety argues that the probate court violated its due process rights by failing to provide any pre-judgment notice that punitive damages could be awarded. The probate court did provide notice, however, directing both Gladstone and the surety to show cause why the court should not find that Gladstone had breached his fiduciary duty, "and why damages or other redress should not be ordered." The court specifically stated in the notice that the conservator should submit to a settlement of accounts and that the court would consider whether to reduce or deny compensation and what other remedies were appropriate, examining his actions in connection with, inter alia, OCGA § 29-5-92. The surety appeared at

---

[32] See OCGA § 10-7-1; *R. J. Griffin & Co.*, 230 Ga. App. at 824.

18

the hearing and presented evidence. Because the surety was afforded notice and a hearing, its due process argument is without merit.[33]

(c) The surety also complains that the probate court disregarded the two-step procedure required by OCGA § 51-12-5.1 (d), i.e., that the trial court first resolve whether an award of punitive damages should be made and then set the amount to be awarded. As we held in Division 4, supra, the probate court complied with OCGA § 29-5-92 (b) (4) in imposing sanctions, and compliance with OCGA § 51-12-5.1 was not required.[34] As the surety has cited no authority holding otherwise, we find no error.

*Judgment affirmed. Dillard, P. J., and Bethel, J., concur.*

---

[33] See *Pennington v. Pennington*, 291 Ga. 165, 167 (3) (728 SE2d 230) (2012) ("A fundamental requirement of due process in any proceeding which is to be accorded finality is notice that is reasonably calculated to inform interested parties of an impending hearing and afford them an opportunity to present their objections.") (citation and punctuation omitted).

[34] See OCGA § 29-9-1.